PETTRIC, Appellant, vs. GRIDLEY DAIRY COMPANY, Respondent. [Two cases.]

*September 17—October 14, 1930.*

For the appellants there was a brief by *Carroll & Thekan* of Milwaukee, and oral argument by *George J. Carroll.*

For the respondent there was a brief by *Hayes, Coleman, McCauley & Hayes,* attorneys, and *James E. Coleman* of counsel, all of Milwaukee, and oral argument by *Mr. Coleman.*

OWEN, J. The defendant Gridley Dairy Company is a manufacturer and distributor of dairy products in the city of Milwaukee. As a part of its advertising plan it extended invitations to various women societies and associations from time to time to visit its central plant. On April 21, 1927, pursuant to one of such invitations, the St. Sebastian's School Parents and Teachers Association of the city of Milwaukee visited said plant. The plaintiff, Catherine Pettric, a member of said association, visited said plant on said date. Shortly before noon the group was taken to the fourth floor by means of a freight elevator and conducted into a dining room where a lecture was given and a lunch was served. This room was placed at the disposal of the visitors for the afternoon for the playing of cards and other social indulgences. Mrs. Pettric did not remain for the afternoon functions and left the dining room after luncheon. Upon leaving the dining room she entered a hallway which was dark. She found her way to a wash-room on the opposite side of the hall which was also dark. She turned on an electric light in the wash-room, and when she returned to the hallway the electric light in the wash-room enabled her to see a sign on the opposite side of the hall reading "This way," with an arrow pointing to a stairway leading down to the floor below. The stairway was dark and the steps were wet, greasy, and slippery. She followed the directions of the sign and proceeded down the stairway. After proceeding a short distance she slipped and fell and bumped down the steps to the bottom of the stairway, sustaining personal injuries.

Both she and her husband brought actions to recover their respective damages resulting from such injuries. The actions were tried together and were argued together in this court. The same special verdict was submitted and the court made the same disposition thereof in each action, so that exactly the same questions are involved in both. In our discussion we will give attention only to the case of Catherine Pettric.

Sec. 101.06, Stats., provides that "Every employer shall furnish employment which shall be safe for the employees therein and shall furnish a place of employment which shall be safe for employees therein and for frequenters thereof. . . . Every employer and every owner of a place of employment or a public building now or hereafter constructed shall so construct, repair or maintain such place of employment or public building, and every architect shall so prepare the plans for the construction of such place of employment or public building, as to render the same safe." The application of this statute to the situation, in part at least, was recognized by the trial court, in obedience to which there was propounded to the jury the question, "Did the defendant fail to construct the stairway in question with respect to the lighting thereof in such manner as to render the same safe?" The jury answered this question "No," and judgment was rendered in favor of the defendant. In the opinion of the trial court this answer absolved the defendant from any liability so far as the safe-place statute was concerned. The court, however, propounded the further question, "Did the defendant fail to maintain the stairway in question at the time and place in question with respect to the lighting thereof in such manner as to render the same safe?" The jury answered this question "Yes," and also found that such failure was the proximate cause of Catherine Pettric's injury. In an opinion disposing of motions after verdict, the court held that the latter question related only to the com-

mon-law duty of the defendant, and that because the evidence did not show that the defendant had either actual or constructive notice of the improper lighting of the stairway, its liability was not shown, under the cases of *Lundgren v. Gimbel Bros.* 191 Wis. 521, 210 N. W. 678, and *Kaszubowski v. Johnson S. Co.* 151 Wis. 149, 138 N. W. 54. This case was tried before the case of *Wilson v. Evangelical Lutheran Church,* 202 Wis. 111, 230 N. W. 708, was decided by this court, in which it was held that the question of whether the safe-place statute required the maintenance of a light in a stairway somewhat similar in a church, was at least a jury question, and that a complaint showing the absence of such a light was not demurrable.

It will be noticed that the statute requires every employer to furnish a place of employment which shall be safe for employees and frequenters thereof, and that he shall not only construct but that he shall repair and maintain such place of employment in such a manner as to render the same safe. The evidence in the case as well as the verdict of the jury negatives any defect in the structure of this stairway. So far as light is concerned, the evidence shows that lights were provided at the head as well as at the foot of these stairs, so that structural defects may be laid out of the case. The evidence was quite sufficient to justify a finding that these lights were not on at the time the plaintiff went down the stairway. The safe-place statute, sec. 101.06, Stats., requires the employer not only to construct but to maintain a place of employment that shall be safe. The defendant, therefore, had not discharged its entire duty under the safe-place statute by providing electric bulbs in this stairway. It was its duty to maintain lights in said stairway if such lights were necessary to render such stairway safe for employees and frequenters. This duty may or may not be substantially the same as the duty imposed upon the defendant by the common law for the safety of its invitees. In

terms, the statute imposes the absolute duty upon the employer to repair and maintain the place of employment so as to render the same safe. We have given consideration to the question of whether this statutory provision does impose an absolute duty on the employer so as to make him practically an insurer of the safety of his premises so far as repair and maintenance is concerned. It would seem that in order to make an employer liable for defects in the nature of repair or maintenance he should have either actual or constructive notice of such defects. Natural principles of justice would seem to require that. Such principles of justice are recognized by the common law, as indicated in *Lundgren v. Gimbel Bros.* 191 Wis. 521, 210 N. W. 678, and cases therein cited. This is so in accord with the natural instincts of justice that a contrary purpose should not be imputed to a legislative act in the absence of an unequivocal declaration of such purpose. We therefore consider that the legislative purpose will be given full scope if the language of the statute be interpreted in accordance with these natural principles of justice, and hold that the duty of the employer to repair or maintain his place of employment does not arise until he has either actual or constructive notice of the defect.

The trial court was of the view that there was no evidence imputing either actual or constructive notice to the defendant that the lights in this stairway were out, for which reason he denied liability, and rendered judgment in favor of the defendant. Whether this be true depends upon the cause of the lights being out. If the bulbs had burned out, or they were out for other natural reasons, then notice to the defendant would be necessary to establish liability. However, there is no evidence in the case to indicate that they had burned out. It is the contention of the defendant that they were in fact burning. The unlighted condition of the stairway is not sought to be excused on the ground that

they had burned out without the knowledge of the defendant. If they were turned out by the employees of the defendant, the unlighted condition of the stairway might be attributable to affirmative conduct for which the defendant would be responsible. But the evidence fails to disclose that they were turned out by human agency, and, especially, what human agency. If the lights were turned off, then the question arises, Who turned them off? Obviously they might have been turned off by any one present in the hallway. They might have been turned off by the employees of the defendant or they might have been turned off inadvertently by some of the visitors. The burden is on the plaintiff to show liability. Upon the theory which seems to be the only one remaining, that they were turned off by some one, it is incumbent upon her to prove that they were turned off by some one for whose act the defendant is responsible. Under the state of the evidence, the jury should not be permitted to guess upon the question of who turned off the lights. *Hyer v. Janesville,* 101 Wis. 371, 77 N. W. 729; *Musbach v. Wisconsin Chair Co.* 108 Wis. 57, 84 N. W. 36; *Quass v. Milwaukee Gas Light Co.* 168 Wis. 575, 170 N. W. 942; *Klein v. Beeten,* 169 Wis. 385, 172 N. W. 736; *Hafemann v. Seymer,* 195 Wis. 625, 219 N. W. 375.

While we have used the term "lights" in the stairway in our previous discussion, what has been said relates more specifically if not entirely to the light at or near the head of the stairway. This was a winding stairway and two lights were installed therein, one at or near the top and one at or near the bottom. The light at the top of the stairway was for continuous use. It was the purpose of the defendant to keep that continually burning, and that is the light to which the evidence in the case was largely directed. The light at the bottom of. the stairway was not devoted to continuous use. That was turned on by the janitor when cleaning the stairway and turned off by him after the completion

of such work. It appears that the very morning upon which this accident occurred, the janitor cleaned the stairway between six and seven o'clock, during which time he turned on the light to enable him to properly do his work, and that after completing such work he turned off the lower light. It will be noticed that the jury found that there was no structural defect by reason of the improper lighting of the stairway. They further found, in effect, that the stairway was unsafe at the time of the accident by reason of the lighting thereof. We do not know what importance the jury attached to the respective upper and lower lights. This was a dark and stormy day, and the jury might well have found that the safety of the stairway might have required the burning of both the upper and lower lights, although such evidently was not the view of the defendant, because the lower light was used only for the purpose of cleaning the stairway. Proper submission of the case to the jury required separate inquiries with reference to the upper and lower lights. In view of the direct conflict in the evidence as to whether the upper light was burning, they might have found that the stairway was nevertheless unsafe because of the conceded fact that the lower light was not burning. For this reason there must be a new trial. There should also be a new trial for another reason.

The plaintiff alleged in her complaint as one defect in the stairway that it was wet, greasy, and slippery, and there is evidence to sustain such allegation. It seems quite as probable that the plaintiff fell by reason of the wet, greasy, and slippery condition of the stairway as by reason of lack of lights therein. Whether this condition of the stairway presented such freedom from danger to the life, health, safety, or welfare of employees or frequenters as the nature of the employment or place of the employment reasonably permitted, was not submitted to the jury. While no specific question upon this phase of the case was requested, plaintiff

did request the submission of the question whether "said stairway at the time and place in question was so maintained as to be safe for the public invited to use the same." This question was refused, and the jury had no opportunity to find the stairway unsafe except with respect to the lighting thereof. While perhaps the question requested was too general, it was sufficient to prevent a waiver of the issue with respect to the safety of the stairway because of its wet, greasy, and slippery condition. Upon a new trial this issue should be submitted to the jury.

*By the Court.*—The judgment in each case is reversed and each cause is remanded for a new trial.