HELMS and another, Respondents, vs. Fox BADGER THEATRES CORPORATION, Appellant.*

*May 27—July 1, 1948.*

* Motion for rehearing denied, with $25 costs, on September 14, 1948.

For the appellant there was a brief by *Bendinger, Hayes & Kluwin* of Milwaukee, and oral argument by *Gerald P. Hayes*.

*K. Thomas Savage* and *David L. Phillips,* both of Kenosha, for the respondents.

FRITZ, J.   The injury to the plaintiff Enacia Helms, for which she and her husband seek to recover damages, was sus-

tained upon her falling to the floor, while walking in defendant's theater through a doorway from a rest room to the mezzanine floor, on a step which extended, on the level of the rest-room floor, one and three-quarters inches beyond the door when closed. The step was seven inches above the mezzanine floor, so that a person walking through the doorway to the mezzanine floor had to step down seven inches. The door to the rest room opened inward, and on the inside there was a space of five feet nine inches from the entrance door to the toilet stalls in the room. The floor in the room was white ceramic tile; and the covering of the mezzanine floor was a variation of gray rubber or asphalt tile of a diamond or square pattern, which varied between dark and light because of the diamond design.

During the evening of May 30, 1946, plaintiffs attended defendant's theater, and Enacia Helms went to the rest room. Upon leaving the room she fell from the step to the mezzanine floor. In the washroom part of the rest room there was a white light in the center of the ceiling, and three feet inside the rest-room door. In the hallway in front of the entranceway from the mezzanine floor to the rest room there was a chrome-amber electric ceiling light about seven feet from the washroom door according to one witness, about five feet according to another witness, or four feet according to measurements on a drawing. Some twelve feet to the left of that entranceway there was a white light over the landing of the stairs leading up to the mezzanine floor. The wattage in the bulbs was forty outside the rest room, and either seventy-five or one hundred inside the rest room. The effect of the chrome-amber bulb was not to dull the light but to spread it, and such bulbs were standard theater equipment.

The jury found that with respect to placing a step between the mezzanine floor and the rest room, defendant did *not* fail to have the entranceway to the rest room from the mezzanine

as safe as the nature of the same would reasonably permit; but. that defendant *did fail* to have such entranceway as safe as the nature thereof would reasonably permit (a) with respect to having a louver light at or near the step; and (b) with respect to having a warning sign of the existence of the step; and that defendant's failure in these two respects were causes of Enacia Helms' injury. The jury found that she was causally negligent in respect to keeping a proper lookout; and that thirty-five per cent of the total cause of her injury was attributable to her negligence, and sixty-five per cent of said cause was attributable to defendant's failure to have its premises as safe as the nature thereof would reasonably permit by having the louver light and having the warning sign. After hearing motions after verdict, judgment for plaintiffs' recovery of damages from defendant was entered on and in accordance with the verdict.

On its appeal defendant contends Enacia Helms' negligence by failing to keep a proper lookout was the efficient cause and only legal cause of her accident; that the questions in the special verdict in respect to louver lights and warning signs should not have been submitted to the jury; that the jury's answers as to those questions should have been changed on defendant's motion after verdict because it was Mrs. Helms' failure to keep a proper lookout that caused her accident; and that the presence of a warning sign or a louver light could not possibly have added to her safety.

Those contentions cannot be sustained. Although there were some conflicts in the evidence, there was sufficient proof to sustain the jury's finding that the placing of the step between the rest room and the mezzanine floor did *not* constitute a failure to have the place as safe as the nature thereof would reasonably permit. However, the jury's findings that plaintiff's injury was caused by defendant's failure (1) to have the louver light at or near the step, and (2) to have a warning sign of the

existence of the step, in order to have the premises as safe as the nature thereof would reasonably permit, were warranted by the evidence of two architects called by plaintiffs, and one architect called by defendant, to the following effect.

Architect Monberg testified:

In the washroom your eyes are accustomed to the bright lights, and you open a door, which is directly over a step, and you look into a mezzanine foyer very dimly lighted. No one's eyes could accustom themselves too quickly to the change. In connection with that, I would consider good practice to have the toilet room brightly lighted and the foyer lighted as it is, *but there should be a louver light or something to draw your attention to the difference in level there because it is very likely your eye will not see it due to the difference in light inside and outside.* In this instance I would locate the louver light about one foot off the floor on either side of the doorway. Such louver light would brighten up the floor where you take off on that step. In my opinion it is a hazard that could be lessened by louver lights and perhaps *by signs on the door,* of eye height, *warning the person* as he stepped out of the door. I agree that there was a bright light in the ladies' washroom. As to whether a louver light in the wall would add to what already is a bright illumination of that room and that step, I would say that it would be a spot of light on the floor. As you open the door your back is to the bright lights, and you open the door which also shades the light from the tread or step. A louver light on one side there would be helpful in that case. It would add more light. The light on the tread is behind you, and, as you open the door toward you, you pull over that portion of the floor and shade it from the light from the back.

Architect Mullin testified:

He made observations as to whether or not there were any warning lights in the toilet, and there were none. His chief objection was to the existence of the single step *unless it was designated with warning signs or lights,*—louver lights used down close to the step or close to the object in question, and by warning signs he said that he meant "step down," "watch your step,"—any safety signs.

Architect Lindl testified:

Where you have a step leading from one level to another, it would not do any harm to have a warning sign, that's for sure. It is true that a warning sign would give some notice to a person of the existence of a step there, but I have never seen a sign of that kind anywhere. I have seen a warning sign in the form of a louver light down near the nose of the step. I don't think it would help any from the standpoint of safety, particularly if you had general overhead lighting. If there was a little light near the step, it would emphasize the step, but we have never used them. It would not be bad practice. And it would not be bad practice to put up a warning sign such as "watch your step."

Thus, by reason of that testimony, it was within the province of the jury to find that defendant's failure to have louver lights at the side of the steps, and to have warning signs on the step or door, constituted failures to have the place as safe as the nature thereof reasonably permitted, and were causes of plaintiff's injury; and that because of these failures sixty-five per cent of the total causes of plaintiff's injury were attributable to defendant as compared to thirty-five per cent thereof attributable to the negligence of Enacia Helms.

In considering the extent to which there was contributory negligence on her part, the jury could take into consideration the facts that at the time of the accident she was about seventy-four to seventy-six years of age, and had been suffering from high blood pressure, and senile dementia of long standing. In this case, as in *Bunce v. Grand & Sixth Building, Inc.,* 206 Wis. 100, 102, 238 N. W. 867, which was a similar action to recover for injuries sustained by a plaintiff in falling in the toilet room of a theater, there are applicable the conclusions stated in the *Bunce Case,* that,—

"In the *Wilson Case* [202 Wis. 111, 230 N. W. 708] it is stated that 'the presence of steps may be very dangerous to frequenters . . . if they are in any way concealed from view.' This is obvious, but it is not to be inferred from it that a step may not be dangerous if not concealed from view if it is in a place where its presence would not reasonably be anticipated.

The *Hommel Case* [166 Wis. 235, 165 N. W. 20] seems to us clearly to refute rather than support counsel's proposition. Mrs. Hommel entered a well-lighted vestibule, five feet square, on the far side of which was a marble step, of color different from that of the floor of the vestibule. Four inches beyond this step swinging doors led into a lobby. Supposing the lobby and the vestibule were on the same level, Mrs. Hommel, without making any particular observation, pushed open the swinging doors and in entering the lobby stumbled over the step and fell sustaining injury. The step there involved was quite as open to observation as the one here. It was even more so, because here the step was of the same color as the floor while there the sharp contrast between the color of the step and the floor would be likely to attract attention. One would have no more reason to anticipate the presence of a step in one case than the other."

*By the Court.*—Judgment affirmed.

MARTIN, J., took no part.

* Motion for rehearing denied, without costs, on September 14, 1948.