Fred A. BARRY, Plaintiff-Appellant-Cross-Respondent,

v.

EMPLOYERS MUTUAL CASUALTY COMPANY, a foreign corporation, Defendant,†

AMERITECH CORPORATION, f/d/b, Wisconsin Bell, Inc., a domestic corporation, Defendant-Third-Party Plaintiff-Respondent-Cross-Appellant,

v.

DAVE TROJAN CONTRACTORS, INC., a domestic corporation, Continental Western Insurance Company, a foreign corporation, Third-Party Defendant-Cross-Respondent,

The BURGMEIER COMPANY, INC., a domestic corporation and Aetna Casualty & Surety Company, a foreign corporation, Third-Party Defendant.

Court of Appeals

*No. 98–2557. Submitted on briefs May 2, 2000.—Decided July 5, 2000.*

2000 WI App 168

(Also reported in 617 N.W.2d 493.)

†Petition to review granted.

On behalf of the plaintiff-appellant-cross-respondent, the cause was submitted on the briefs of *Michael I. Tarnoff*, of *Warshafsky, Rotter, Tarnoff, Reinhardt & Bloch, S.C.*, of Milwaukee.

On behalf of the defendant-third-party plaintiff-respondent-cross-appellant, the cause was submitted on the briefs of *Peter F. Mullaney* of *Peterson, Johnson & Murray, S.C.*, of Milwaukee.

On behalf of the third-party defendant-cross-respondent, the cause was submitted on the brief of *Thomas A. Ogorchock*, of *Miller & Ogorchock, S.C.*, of Milwaukee.

On behalf of the *Wisconsin Academy of Trial Lawyers*, there was a nonparty brief filed by *David M. Skoglind*.

Before Fine, Schudson and Curley, JJ.

¶ 1. SCHUDSON, J.  Fred A. Barry appeals from the judgment, following a jury trial, awarding him $36,225 plus costs, in his action against Ameritech Corporation, resulting from his fall on a stairway at the Ameritech offices where he had been working.[1] Barry argues: (1) under the safe-place statute, Ameritech had a nondelegable duty such that the causal negligence of The Burgmeier Company, Inc., an independent contractor hired by Ameritech to maintain the stairway, should have been imputed to Ameritech; (2) retroactive application of WIS. STAT. § 895.045 (1995–96),[2] precluding joint and several liability in this case, is unconstitutional; and (3) no credible evidence sup-

---

[1] The $36,225 plus costs was awarded to Barry and Employers Mutual Casualty Company. Throughout this litigation, Ameritech Corporation also was referred to as Wisconsin Bell, Inc. We will use "Ameritech" to refer to either Ameritech Corporation or Wisconsin Bell, Inc.

[2] All references to the Wisconsin Statutes are to the 1995–96 version unless otherwise noted.

ported the jury's finding that he was 10% causally negligent.

¶ 2. Ameritech cross-appeals. Ameritech argues that the trial court erred: (1) in concluding that the stairway condition causing Barry's fall was "a structural defect"; and (2) in not instructing the jury, therefore, that in order for Barry to prevail, he had to prove Ameritech's actual or constructive notice of the defect. Thus, Ameritech argues, the trial court erred in denying its motion for judgment notwithstanding the verdict. Ameritech also argues that the trial court erred in formulating a jury question regarding indemnification of Dave Trojan Contractors, Inc., Barry's employer.

¶ 3. We conclude that the trial court erred in determining that the stairway condition was "a structural defect." Because the condition was not "a structural defect," but rather, was "an unsafe condition associated with the structure," Barry would have had to prove that Ameritech had actual or constructive notice of the condition. The record does not establish that Barry did so, and the jury never was instructed regarding either the need for notice or the definition of notice. Therefore, we conclude that the trial court erred in denying Ameritech's motion for judgment notwithstanding the verdict.[3]

---

[3] Resolution of the cross-appeal on this basis obviates the need to address any of the other issues on the appeal or cross-appeal. *See Gross v. Hoffman*, 227 Wis. 296, 300, 277 N.W. 663 (1938) (only dispositive issues need to be addressed).

The judgment for Fred A. Barry also was in favor of Employers Mutual Casualty Company, the worker's compensation carrier for Barry's employer. Employers, however, does not appeal. The judgment also dismissed the third party complaints against Dave Trojan Contractors, Inc., and Continental West-

## I.  BACKGROUND

¶ 4.   Barry worked as a project manager for Trojan, a general contractor providing services at Ameritech's data center offices in 1992 and 1993. On January 7, 1993, Barry returned to the Ameritech offices to prepare a proposal for additional work, to verify that Trojan employees had returned the Ameritech security cards they had used while working there, and to visit with some Ameritech employees. Barry was injured when he fell on a winding stairway, apparently after tripping on a loose "nosing"—the narrow rubber strip covering the full length of the front edge of each carpeted step. The nosings were not part of the original stairway. They had been installed for aesthetic purposes, and to eliminate the need for repeated regluing of the front edges of the carpeting covering the stairs. After Barry's fall, inspection revealed that the nosings on several steps, including the one where Barry tripped, had come loose apparently due to the failure of the adhesive holding them to the steps.

¶ 5.   Barry sued Ameritech under the safe-place statute.[4] Ameritech, in turn, brought a third-party

---

ern Insurance Company; and The Burgmeier Company, Inc., and Aetna Casualty & Surety Company; and dismissed the claim of intervening plaintiff Midwest Security Life Insurance Company. None of those parties, however, has appealed.

[4] Barry's complaint alleged "safe place statute violations," but never cited or quoted a specific safe-place statutory provision. The balance of the record, however, clarified that his action was filed with reference to WIS. STAT. § 101.11(1) (1993–94) which provides:

> Every employer shall furnish employment which shall be safe for the employes therein and shall furnish a place of employment which shall be safe for employes therein and for frequenters thereof and shall furnish and use safety devices and safeguards, and shall

action against Burgmeier, the contractor responsible for installation of the nosings. Ameritech also brought a third-party action against Trojan, for indemnification pursuant to the Ameritech/Trojan contract under which Barry was working. The jury found Ameritech 45% negligent, Burgmeier 45% negligent, and Barry 10% negligent.

¶ 6. We begin with the cross-appeal because, as Ameritech explains, "[t]he issues raised in Barry's appeal are relevant only if this court affirms the jury verdict apportioning 45% of the causal negligence to Ameritech." Barry does not dispute that if Ameritech is correct in its cross-appeal challenge to the trial court's safe-place statute ruling that the stairway defect was "structural," and if the trial record does not establish that Ameritech had actual or constructive notice of the loose nosing, then the jury's verdict cannot stand.

## II. DISCUSSION

### A. "Structural" / "Associated With the Structure"

¶ 7. Was the stairway condition ·a "structural" defect, or was it "an unsafe condition associated with the structure"? Barry and Ameritech agree that the distinction is critical and, as we will explain, the answer makes a dispositive difference in this case.

¶ 8. "The safe-place statute requires a place of employment to be kept as safe as the nature of the

---

adopt and use methods and processes reasonably adequate to render such employment and places of employment safe, and shall do every other thing reasonably necessary to protect the life, health, safety, and welfare of such employes and frequenters. Every employer and every owner of a place of employment or a public building now or hereafter constructed shall so construct, repair or maintain such place of employment or public building as to render the same safe.

premises reasonably permits." *Strack v. Great Atl. & Pac. Tea Co.*, 35 Wis. 2d 51, 54, 150 N.W.2d 361 (1967). "The various conditions of which safe-place law takes cognizance have been classified as (A) structural defects, (B) unsafe conditions associated with the structure, and (C) unsafe conditions unassociated with the structure." HOWARD H. BOYLE, JR., WISCONSIN SAFE-PLACE LAW REVISED 139 (1980).[5] In this case, Barry and Ameritech debate whether the stairway condition falls in the first or second category.

¶ 9.   If a condition that causes injury is "a structural defect," "[a]n owner or employer sustains safe-place liability . . . regardless of whether he [or she] knew or should have known that such defect existed." *Id.* at 157. If, however, a condition that causes injury is not "a structural defect," but rather, is "associated with the structure," "no liability attaches" to the owner or employer "until he [or she] has 'either actual or constructive notice of such defects,' and an opportunity 'to remedy the situation and avoid the accident.' " *Id.* at 158–59. Whether a condition is "a structural defect" or "associated with the structure" presents an issue of law and, therefore, the trial court's resolution of that issue is subject to our *de novo* review. *See Gloudeman v. City of St. Francis*, 143 Wis. 2d 780, 784, 422 N.W.2d 864 (Ct. App. 1988) ("Appellate courts decide questions of law independently and give no deference to the decisions of a trial court."); *see also Geiger v. Milwaukee*

[5] Both in the trial court and on appeal, Barry and Ameritech have relied on HOWARD H. BOYLE, JR., WISCONSIN SAFE-PLACE LAW REVISED (1980), the treatise which the trial court aptly termed "the definitive work in this area." *See Powell v. Milwaukee Area Technical College Dist. Bd.*, 225 Wis. 2d 794, 810–13, 594 N.W.2d 403 (Ct. App. 1999).

*Guardian Ins. Co.*, 188 Wis. 2d 333, 336, 524 N.W.2d 909 (Ct. App. 1994) ("Interpretation of the safe-place statute is a question of law which we review de novo.").

¶ 10.   In this case, the trial court ruled that the stairway nosing condition was "a structural defect." After reviewing many examples of "structural" defects and "associated with the structure" defects described in the case law and summarized in the BOYLE treatise, the court concluded:

> So, I guess you can have examples that go both ways. It depends on the circumstances of each case.
>
> In this case, it seems to me that the stairs were designed to be a metal can [sic] filled with concrete, and as I gather the testimony from the engineers, covered by carpeting, that that was part of the structural plan. . . . Ameritech was aware that there was a problem with the stairs because Mr. Barry was one of the people called to come out there to see if something could be done to fix that stairway and the loose carpeting. And the gentleman in charge of that testified that he finally came up with a plan that involved putting one of those tack boards underneath the tread and pulling the carpeting over it to hold it in place. But before that, the manner in which they determined the structure was to be maintained was to put those nose guards on there.
>
> I'm going to hold, and I do hold, that the nose guards therefore then became part of the structure, and if it was a defect, it was a structural defect.[6]

---

[6] The trial court's exact understanding of the stairway structure is somewhat in doubt. Denying Ameritech's motion for judgment notwithstanding the verdict, the trial court commented:

> In this case, as I recall, the steps were made out of metal. They can be made out of concrete and covered by carpet. Virtually, there

(Footnote added.) Therefore, the court concluded, Barry was not required to prove that Ameritech had actual or constructive notice. Accordingly, the trial court did not instruct the jury on notice.

¶ 11. As the parties note, no single case has precisely defined and distinguished "structural defects" and "unsafe conditions associated with the structure." As Ameritech correctly argues, however, "[t]he cases as a whole . . . suggest that defects in original design or construction are structural." In contrast, modifications of, or additions to, the original structure may render "unsafe conditions associated with the structure."

¶ 12. "[A] defect would be 'structural' if it resulted by reason of the materials used in construction or from improper layout or construction." BOYLE at 140. "Conditions 'associated with the structure,' " on the other hand, "are those which involve the structure (or the materials with which it is composed) becoming out of repair or not being maintained in a safe manner." *Id.* at 143. While these definitions may not easily apply to all circumstances, they do articulate the general consensus that emerges from the numerous safe-place-statute cases considered in the BOYLE treatise, and should provide a workable framework for most situations. Clearly, they provide a solid structure on which we can resolve the instant appeal.

¶ 13. Generally, under the BOYLE definitions, "unsafe conditions associated with the structure" are

---

was evidence that the nosing was permanently attached to the carpet to keep it from slipping.

I think although it could be argued either way that the nosing here is not a temporary or easily moved structure, it's more like the situation [described in the BOYLE treatise] where the bleacher seats came loose or nails protruded through the floor.

And I think . . . my earlier ruling that this was a structural defect is correct.

not those of a building's original design or construction. Instead, they arise from any number of circumstances stemming from subsequent repair, maintenance or modification.[7] Not surprisingly, therefore, unsafe stairways may have defects that are either "structural," or "associated with the structure," depending on the facts. Wisconsin case law provides several examples of stairway defects that are structural. As BOYLE summarizes:

> Defects in connection with steps are structural in nature where such steps do not have non-slip surface as required by [Department of Industry, Labor and Human Relations] orders, where they lead to unsafe ground, and where they are so located as not to be anticipated. Absence of a handrail on stairways, where the same is required by safety orders, is a structural matter.

BOYLE at 140–41 (footnotes omitted). All these conditions relate to the original stairway structure, location, and safety codes or requirements. Such stairway defects render dangers unrelated to any repair, main-

---

[7] In fact, the "modification" may even be unintended. For example, in *Boutin v. Cardinal Theatre Co.*, 267 Wis. 199, 64 N.W.2d 848 (1954), a movie theater patron injured his back when he "sat violently upon the floor" because the seat on which he had attempted to sit had no cushion. *See id.* at 201. The supreme court observed that while the theater seats were safe as originally constructed and installed, they needed "to be kept so" under the "duty of maintenance and repair" imposed by the safe-place statute. *See id.* at 202. But given that the defective seat was an unsafe condition associated with the structure, and not a structural defect in the original seat, the patron's safe-place claim was dismissed because he failed to prove that the owner had actual or constructive notice of the problem. *See id.* at 205.

tenance, or modification; that is, the stairways would have been as unsafe at the time of their finished construction as at the time of a subsequent fall. Thus, these defects differ significantly from the stairway defect in the instant case.

¶ 14. The trial court accurately acknowledged that "the manner in which [Ameritech] determined the structure *was to be maintained* was to put those nose guards on there." (Emphasis added.) But the trial court failed to reach the rather obvious corollary: nosings *added* to the original stairway are not part of the original structure, but rather, are "associated with the structure." To conclude otherwise would be to accept what Ameritech terms "circular reasoning," effectively "transmogrify[ing] all maintenance and repair defects into structural defects."[8] Thus, we conclude that the

---

[8] Barry argues that "adding nosings to each step . . . is essentially a permanent reconstruction," and that "the nosings were intended to become a permanent . . . part of the stairway." Although Barry's implicit theory is intriguing, it simply does not encompass the facts of this case.

Granted, one could contemplate "a permanent reconstruction" which, while not part of the "original design or construction," could bring a modification within the scope of "structural defect." A remodeling, for example, could indeed introduce original new structures to an existing building. Though not parts of the original structure, these new additions could contain or render defects that would be "structural."

Here, however, the addition of the nosings was but the latest in a series of repair and maintenance efforts aimed at enhancing the appearance of the original stairway. As Ameritech explains, it made "a *maintenance* decision to install the rubber nosings, to eliminate the need for regluing the carpet to the step edges."

135

trial court erred in ruling that the stairway nosing defect was "structural."

## B. Notice

¶ 15.   The supreme court has explained that, because "the owner of a place of employment is not an insurer of frequenters of [the] premises, in order to be liable for a failure to correct a defect, [the owner] must have actual or constructive notice of it." *Strack*, 35 Wis. 2d at 54 (citations omitted). Barry does not argue that Ameritech had actual notice of the stairway defect. He contends, however, that "the record contains very substantial evidence of both Ameritech's constructive notice of the loose nosings, as well as Ameritech's negligence in failing to remedy that defect." *See generally Kaufman v. State St. Ltd. Partnership*, 187 Wis. 2d 54, 59–65, 522 N.W.2d 249 (Ct. App. 1994) (regarding constructive notice).

¶ 16.   Barry maintains, therefore, that even if the stairway defect was not "structural" and, as a result, he was required to prove that Ameritech had notice, he did so. Thus, Barry asserts, even if we conclude, as we

---

Barry concedes that "re[ ]gluing the front edges of the stairway carpeting might be an example of maintenance and repair," but he still submits that adding nosings was a permanent reconstruction. We disagree. It would make no sense to base a legal distinction on the slight factual difference between "re[ ]gluing the front edges of the stairway carpeting" and adding rubber nosings in an attempt to accomplish the same result. Although Ameritech, no doubt, hoped that the nosings would do the job and, therefore, become permanent additions, such hoped-for permanence does not make the nosings "structural." In fact, given the nature and purpose of the nosings, they seem to be an excellent example of a maintenance modification that captures the phrase, "associated with the structure."

have, that the stairway defect was a "condition associated with the structure," he proved constructive notice so the verdict and judgment should stand. We disagree.

¶ 17. Barry does not seek a new trial with the opportunity to prove constructive notice, as would be required under the proper "associated with the structure" standard. Instead, he asks that we review the evidence and conclude that he proved constructive notice. We decline to do so. Even if, after reading the trial transcript, we would accept Barry's theory of constructive notice, we certainly could not assume that the jury would have been convinced. After all, on appeal, both Barry and Ameritech point to evidence of notice, or lack thereof, and debate whether Ameritech had constructive notice. We need not resolve their debate. We need only acknowledge what, implicitly at least, Barry and Ameritech do *not* dispute: that a jury reasonably could conclude that the evidence, or lack thereof, did or did not establish Ameritech's constructive notice of the stairway nosing defect.

¶ 18. Thus, the jury would have had to consider the issue of whether Ameritech had constructive notice under the proper standard jury instruction which provides, in the last paragraph:

> To find that (underline defendant) failed to (construct) (repair) or (maintain) the premises in question as safe as the nature of the place reasonably permitted, you must find that (underline defendant) had actual notice of the alleged defect in time to take reasonable precautions to remedy the situation or that the defect existed for such a length of time before the accident that (underline defendant) or its employees in the exercise of reasonable diligence (this includes the duty of inspection) should have discovered the defect in time to take reasonable precautions to remedy the

situation. However, this notice requirement does not apply where (<u>defendant</u>)'s affirmative act created the defect.

WIS JI—CIVIL 1900.4. The paragraph is prefaced by the notation that it "**should not be given where the defect is a structural defect.**" *Id.* Without this paragraph of the instruction, required in cases involving defective "conditions associated with the structure," we do not know whether the jury would have found that Ameritech had constructive notice.

¶ 19. Barry succeeded in convincing the trial court that the stairway defect was "structural." He argued that the last paragraph should not be included in the jury instruction, and the trial court agreed.[9] Accordingly, the trial court did not instruct the jury as it would have, had Barry agreed with Ameritech that the defect was "associated with the structure." Barry's

---

[9] Although some portions of the jury instruction conference were not reported, the record clearly reflects that Barry, consistent with his position that the stairway defect was "structural," opposed the inclusion of the last paragraph of WIS JI—CIVIL 1900.4. Ameritech, requested the jury instruction, including the last paragraph.

We note that when the jury conference proceedings resumed on the record and the trial court announced its intended instructions, Ameritech voiced no objection to the "form of the verdict or the instructions." We read that, however, as Ameritech's acquiescence to the necessary exclusion of the last paragraph only in light of the trial court's rejection of Ameritech's primary position: that the defect was "associated with the structure." The record further establishes that Ameritech consistently maintained throughout the trial, including its motions (for directed verdict, to change the jury's answer, and for judgment notwithstanding the verdict), that because the stairway defect was not "structural," but rather, was "associated with the structure," notice was a critical issue.

argument simply ignores the fact that the jury never received this instruction and, therefore, never was asked to consider notice.

¶ 20.   On appeal, Ameritech urges that Barry's action be dismissed. In the alternative, *Ameritech* seeks a new trial "only to determine Trojan's contractual duty of indemnification" or "on the notice issue." But *Barry* does not seek a new trial with the inclusion of the notice instruction and with further opportunity to establish constructive notice. Barry does not seek a new trial, even in the alternative, in the event we reject his primary argument that the stairway defect was "structural." Instead, Barry insists that his evidence of constructive notice was sufficient. But by prevailing in his argument that the defect was "structural," Barry eliminated notice as a trial issue and effectively precluded the jury's consideration of what he now contends was substantial evidence of constructive notice.

¶ 21.   Accordingly, we conclude that Ameritech is correct; the trial court should have granted its motion for judgment notwithstanding the verdict. *See* WIS. STAT. § 805.14(5)(b).[10]

*By the Court.*—Judgment reversed.

————

[10] WISCONSIN STAT. § 805.14(5)(b) provides:

> *Motion for judgment notwithstanding verdict.* A party against whom a verdict has been rendered may move the court for judgment notwithstanding the verdict in the event that the verdict is proper but, for reasons evident in the record which bear upon matters not included in the verdict, the movant should have judgment.