Fred A. BARRY, Plaintiff-Appellant-Cross-Respondent-Petitioner,

v.

EMPLOYERS MUTUAL CASUALTY COMPANY, a foreign corporation, Defendant,

AMERITECH CORPORATION, f/d/b, Wisconsin Bell, Inc., a domestic corporation, Defendant-Third-Party Plaintiff-Respondent-Cross-Appellant,

v.

DAVE TROJAN CONTRACTORS, INC., a domestic corporation, Continental Western Insurance Company, a foreign corporation, Third-Party Defendant-Cross-Respondent,

The BURGMEIER COMPANY, INC., a domestic Corporation, and Aetna Casualty & Surety Company, a foreign corporation, Third-Party Defendant.

Supreme Court

*No. 98–2557. Oral argument April 6, 2001.—Decided July 10, 2001.*

## 2001 WI 101

(Also reported in 630 N.W.2d 517.)

For the plaintiff-appellant-cross respondent-petitioner there were briefs by *Michael I. Tarnoff, Frank T. Crivello II* and *Warshafsky, Rotter, Tarnoff, Reinhardt & Bloch, S.C.*, Milwaukee, and oral argument by *Michael I. Tarnoff.*

For the defendant-third party plaintiff-respondent-cross appellant there was a brief by *Peter F. Mullaney* and *Peterson, Johnson & Murray, S.C.*, Milwaukee, and oral argument by *Peter F. Mullaney.*

An amicus curiae brief was filed by *David M. Skog-lind* and *Aiken & Scoptur, S.C.*, Milwaukee, on behalf of the Wisconsin Academy of Trial Lawyers.

¶ 1. DIANE S. SYKES, J. This case arises under Wisconsin's safe place statute, Wis. Stat. § 101.11 (1995–96),[1] and raises the question of whether a loose stairway nosing that caused the plaintiff to fall down a flight of stairs on the defendant's property constituted a "structural defect" or an "unsafe condition associated with the structure." If it was a "structural defect" the property owner is liable under the statute regardless of whether it had notice of the defect. If it was an "unsafe condition associated with the structure" the property owner is liable only if it had actual or constructive notice of the condition.

¶ 2. Other issues are also raised: 1) whether, if notice is required, a new trial should be granted; 2) whether the causal negligence of the subcontractor who installed the nosings should be imputed to the property owner; 3) whether retroactive application of the 1995 amendment to the comparative negligence statute, Wis. Stat. § 895.045, is constitutional; and 4) whether sufficient evidence supported the jury's finding that the plaintiff was ten percent contributorily negligent.

¶ 3. We agree with the court of appeals' conclusion that the loose nosing was an "unsafe condition associated with the structure" rather than a "structural defect." Thus, the plaintiff was required to prove that the defendant property owner had notice of the condition. We disagree, however, with the court of

---

[1] All subsequent references to the Wisconsin Statutes are to the 1995–96 version unless otherwise indicated.

appeals' conclusion that a new trial is not required. Because the jury was not instructed on the notice issue, the case was not fully tried and therefore must be reversed and remanded for a new trial on the issue of liability.

I

¶ 4. Plaintiff Fred A. Barry worked as a project manager for Dave Trojan Contractors, Inc., which handled all project management for construction and remodeling of defendant Ameritech Corporation's data center in Pewaukee, Wisconsin. The data center building featured a curved stairway between the first floor and the ground floor. Originally, the stairway was fully carpeted. Problems developed when the glue stopped holding the carpeting at the bottom edge of each step. The carpeting began coming loose and attempts to reglue it failed.

¶ 5. To fix the problem, Ameritech hired The Burgmeier Company to install vinyl strips, called nosings, on the front of each step to hold the carpeting in place. This work was completed in September 1991.

¶ 6. After the nosings were in place, Ameritech received complaints from women who had caught their heels on the edges of the new nosings. Dan Wilson, the environmental manager at the data center, investigated and discovered that there was a one-eighth-inch discrepancy between the height of the nosing and the adjoining carpeting. Ameritech solicited, and Barry submitted, a proposal for eliminating the discrepancy.

¶ 7. On January 7, 1993, Barry went to the data center to take some measurements and also to meet with Ameritech employees. Barry began descending the stairway when he noticed another individual coming up the stairs. He moved aside so that the other

person could pass. As he did so, he felt his legs go out from under him and he landed on his back on the stairs.

¶ 8. After his fall, Barry alerted Wilson and they investigated. The two noticed that the nosing on the step where Barry fell had become loose and was partially detached from the step itself. Although Barry initially thought he was just shaken by the fall, he eventually became sick and was taken to the hospital where he was diagnosed with severe head, neck, and back injuries.

## II

¶ 9. Barry sued Ameritech under the safe place statute. Ameritech, in turn, commenced a third-party action for contribution against Burgmeier and for indemnification from Trojan under the Ameritech/Trojan contract.

¶ 10. In May 1998 a jury trial was held in Milwaukee County Circuit Court. At the close of Barry's case, Ameritech moved for dismissal, arguing that the loose nosing was not a "structural defect" but instead was an "unsafe condition associated with the structure," which required Barry to prove that Ameritech had actual or constructive notice of the condition, and that he had not done so. The circuit court, the Honorable Victor Manian, denied the motion, agreeing with Barry's position that the loose nosing was a "structural defect" and therefore no notice was required. Consequently, the court did not instruct the jury on the issue of notice. *See* Wis JI—Civil 1900.4 (directing that the notice instruction should be omitted when the unsafe condition is a structural defect rather than an unsafe condition associated with the structure).

¶ 11. The jury found that Ameritech was negligent in failing to maintain the stairway in as safe a

manner as the nature of the premises reasonably permitted, and that Burgmeier was causally negligent in installing the nosing. The jury apportioned liability as follows: 45 percent to Ameritech, 45 percent to Burgmeier, and ten percent to Barry. The jury set damages at $80,500.

¶ 12. Both parties filed postverdict motions. Barry argued that 1) no credible evidence supported the jury's finding that he was ten percent contributorily negligent; 2) retroactive application of the 1995 amendment[2] to the comparative negligence statute, Wis. Stat. § 895.045, was unconstitutional; and 3) the non-delegable nature of Ameritech's safe place statute duty required that Burgmeier's negligence be imputed to Ameritech.

¶ 13. Ameritech asked for judgment notwithstanding verdict pursuant to Wis. Stat. § 805.14, renewing its argument that the loose nosing was an "unsafe condition associated with the structure" requiring Barry to prove notice. In the alternative, Ameritech moved for a new trial pursuant to Wis. Stat. § 805.15(1), limited to the issue of notice. The circuit court denied all motions and entered judgment against Ameritech for its portion of the damages—$36,225 plus costs. The court dismissed the third-party complaint against Trojan, awarding costs in the amount of $1,355.59, and dismissed the third-party complaint against Burgmeier without costs.

¶ 14. Barry appealed, asserting three claims of error: 1) that Burgmeier's negligence should have been imputed to Ameritech because Ameritech had a non-delegable duty under the safe place statute; 2) that retroactive application of Wis. Stat. § 895.045 was

---

[2] *See* 1995 Wis. Act 17, § 1.

unconstitutional; and 3) that no credible evidence supported the jury's finding that he was ten percent contributorily negligent.

¶ 15. Ameritech cross-appealed, reasserting its contention that the circuit court erred by characterizing the loose nosing as a "structural defect" rather than an "unsafe condition associated with the structure," and consequently failing to instruct the jury on notice.

¶ 16. The court of appeals reversed, concluding that the loose nosing was an "unsafe condition associated with the structure" because it arose from "subsequent repair, maintenance or modification" of the property, and therefore proof of notice was required. *Barry v. Employers Mut. Cas. Co.*, 2000 WI App 168, ¶¶ 13–14, 238 Wis. 2d 125, 617 N.W.2d 493. The court of appeals declined, however, to remand for a new trial on the notice issue, because Barry had not requested one. *Id.* at ¶ 20. Because its characterization of the unsafe condition was dispositive, the court of appeals did not reach the issues raised by Barry. We accepted review.

### III

¶ 17. The primary issue in this case is how to classify the loose nosing that caused Barry's fall for purposes of the safe place statute—as a "structural defect" or as an "unsafe condition associated with the structure." This requires us to interpret and apply the safe place statute to these facts and thus presents a question of law that we review de novo. *Geiger v. Milwaukee Guardian Ins. Co.*, 188 Wis. 2d 333, 336, 524 N.W.2d 909 (Ct. App. 1994).

¶ 18. Wisconsin's safe place statute, Wis. Stat. § 101.11(1), is a negligence statute that, rather than creating a distinct cause of action, *Krause v. Veterans of Foreign Wars Post No. 6498*, 9 Wis. 2d 547, 552, 101 N.W.2d 645 (1960), instead establishes a duty greater than that of ordinary care imposed at common law. *Topp v. Cont'l Ins. Co.*, 83 Wis. 2d 780, 788, 266 N.W.2d 397 (1978); *Dykstra v. Arthur G. McKee & Co.*, 92 Wis. 2d 17, 26, 284 N.W.2d 692 (Ct. App. 1979).

¶ 19. Specifically, the statute requires that "[e]very employer and every owner of a place of employment or a public building now or hereafter constructed shall so construct, repair or maintain such place of employment or public building as to render the same safe." Wis. Stat. § 101.11(1). The statute defines "safe" as:

> [S]uch freedom from danger to the life, health, safety or welfare of employes or frequenters, or the public, or tenants, or fire fighters, and such reasonable means of notification, egress and escape in case of fire, and such freedom from danger to adjacent buildings or other property, as the nature of the employment, place of employment, or public building, will reasonably permit.

Wis. Stat. § 101.01(13).

¶ 20. By its plain terms, the statute imposes three duties on employers and owners of places of employment or public buildings: the duty to construct, to repair, and to maintain a safe place of employment or public building. Ameritech is the owner of a place of employment and therefore was charged with these

three statutory duties to frequenters[3] of the place of employment, including Fred Barry.

¶ 21. Safe place cases tend to focus on the property condition that caused the injury rather than on the duty that the property owner or employer breached. The cases generally recognize three categories of unsafe property conditions, but only two are relevant to this case: "structural defects" and "unsafe conditions associated with the structure."[4] Howard H. Boyle, Jr., *Wisconsin Safe-Place Law Revised* 139 (1980).

¶ 22. The classification of the hazardous property condition is often crucial in safe place cases because of the differing notice requirements for each. A property owner or employer is liable for injuries caused by structural defects regardless of whether he or she knew or should have known that the defect existed. *Hommel v. Badger State Inv. Co.*, 166 Wis. 235, 242, 165 N.W. 20 (1917); *Hannebaum v. DiRenzo & Bomier*, 162 Wis. 2d 488, 500, 469 N.W.2d 900 (Ct. App. 1991); Boyle, *supra* 157.

---

[3] A frequenter is "every person, other than an employe, who may go in or be in a place of employment or public building under circumstances which render such person other than a trespasser." Wis. Stat. § 101.01(6).

[4] An employer, but not an owner of a public building, *see Ruppa v. American States Insurance Co.*, 91 Wis. 2d 628, 639–40, 284 N.W.2d 318 (1979), may also be liable for "unsafe conditions unassociated with structure," a category that has been extrapolated from the employer's duty to furnish "employment which shall be safe" under Wis. Stat. § 101.11(1). *See Niedfelt v. Joint Sch. Dist. No. 1 of City of Viroqua*, 23 Wis. 2d 641, 647, 127 N.W.2d 800 (1964); *Jaeger v. Evangelical Lutheran Holy Ghost Congregation*, 219 Wis. 209, 211–12, 262 N.W. 585 (1935). No one has raised this basis for safe place liability, however, and so we do not address it.

¶ 23. However, where the property condition that causes the injury is an unsafe condition associated with the structure, this court has grafted a notice requirement onto the safe place statute. *Pettric v. Gridley Dairy Co.*, 202 Wis. 289, 293, 232 N.W. 595 (1930). In *Pettric* the court imported common law notice principles into the safe place statute context, concluding that in order for an employer to be liable in cases involving repair or maintenance, he or she must have actual or constructive notice of the defect.

> In terms, the statute imposes the absolute duty upon the employer to repair and maintain the place of employment so as to render the same safe. We have given consideration to the question of whether this statutory provision does impose an absolute duty on the employer so as to make him practically an insurer of the safety of his premises so far as repair and maintenance is concerned. It would seem that in order to make an employer liable for defects in the nature of repair or maintenance he should have either actual or constructive notice of such defects. Natural principles of justice would seem to require that. Such principles of justice are recognized by the common law, as indicated in *Lundgren v. Gimbel Bros.*, 191 Wis. 521, 210 N.W. 678, and cases therein cited. This is so in accord with the natural instincts of justice that a contrary purpose should not be imputed to a legislative act in the absence of an unequivocal declaration of such purpose. We therefore consider that the legislative purpose will be given full scope if the language of the statute be interpreted in accordance with these natural principles of justice, and hold that the duty of the employer to repair or maintain his place of

employment does not arise until he has either actual or constructive notice of the defect.

*Id.*

¶ 24. Safe place cases are highly fact-specific and arise under a multitude of circumstances that make it difficult to craft a precise test for determining whether a hazardous property condition is "structural" or "associated with the structure." Furthermore, while the statute refers to the *duties* imposed upon employers and owners (to construct, repair and maintain a safe place of employment or public building), the cases refer to the *conditions* that arise from the breach of those duties (structural defects and unsafe conditions associated with the structure).

¶ 25. We can extrapolate from the language of the statute and the cases, however, that a breach of the statutory duty to repair or maintain (as distinct from the statutory duty to safely construct) creates an "unsafe condition associated with the structure." This is consistent with an authoritative treatise on the safe place statute:

> Conditions "associated with the structure" are those which involve the structure (or the materials with which it is composed) becoming out of repair or not being maintained in a safe manner. Such conditions are those referred to in the statutory injunction to *"repair or maintain* such place of employment or public building."

Boyle, *supra* 143–44.

¶ 26. *Boutin v. Cardinal Theatre Co.*, 267 Wis. 199, 202, 64 N.W.2d 848 (1954), confirms this interpretation. In *Boutin*, the plaintiff was injured when he fell to the floor after attempting to sit in a theater seat that

had a missing cushion. *Id.* at 201. This court concluded that the missing cushion was an "unsafe condition associated with the structure," noting that although the theater seats were safely constructed, "seats originally safe are to be kept so. That is the duty of maintenance and repair which the statute imposes." *Id.* at 202.

¶ 27. "Unsafe conditions associated with the structure" have been found in cases involving: improper lighting;[5] the failure to remedy the movement of gravel that resulted in a height disparity between the edge of a paved parking lot and an abutting gravel strip;[6] a loose window screen;[7] and an improperly connected elevator motor.[8] The common theme of these cases is that the property hazards arose from the failure to keep an originally safe structure in proper repair or properly maintained.

¶ 28. If an "unsafe condition associated with the structure" arises from a breach of the statutory duty to repair or maintain, then a "structural defect" arises from a breach of the statutory duty to construct a safe building. A defect is structural if it arises "by reason of

---

[5] *Zimmers v. St. Sebastian's Congregation of Milwaukee*, 258 Wis. 496, 501, 46 N.W.2d 820 (1951); *Helms v. Fox Badger Theatres Corp.*, 253 Wis. 113, 118, 33 N.W.2d 210 (1948); *Heiden v. City of Milwaukee*, 226 Wis. 92, 102, 275 N.W. 922 (1937); *Pettric v. Gridley Dairy Co.*, 202 Wis. 289, 290, 232 N.W. 595 (1930).

[6] *Topp v. Cont'l Ins. Co.*, 83 Wis. 2d 780, 782, 266 N.W.2d 397 (1978).

[7] *Wright v. St. Mary's Hosp. of Franciscan Sisters, Racine*, 265 Wis. 502, 503, 61 N.W.2d 900 (1954).

[8] *Kaczmarski v. F. Rosenberg Elevator Co.*, 216 Wis. 553, 257 N.W. 598 (1934).

the materials used in construction or from improper layout or construction." Boyle, *supra* 140. Thus, unlike a condition associated with the structure, which may develop over time, a structural defect is a hazardous condition inherent in the structure by reason of its design or construction. *See* Carl Neprud Otjen, Note, *Safe Place Statute—Section 101.06—New Applications,* 1948 Wis. L. Rev. 568, 569 (1948).

¶ 29. "Structural defects" have been found in cases involving: the failure to install a handrail along a staircase;[9] a trapdoor that was not surrounded by a railing;[10] a balcony railing that was not high enough;[11] and a false ceiling that did not support a worker's weight.[12]

¶ 30. We agree with the court of appeals' conclusion that the loose stairway nosing that caused Barry's fall was an "unsafe condition associated with the structure" rather than a "structural defect," because it resulted from a failure to repair or maintain the stairway, not a failure to safely construct the stairway. As the court of appeals noted: "nosings *added* to the original stairway are not part of the original structure, but rather, are 'associated with the structure.' To conclude otherwise would be to accept. . .'circular reasoning,' effectively 'transmogrify[ing] all maintenance and

---

[9] *Harnett v. St. Mary's Congregation,* 271 Wis. 603, 74 N.W.2d 382 (1956); *Burling v. Schroeder Hotel Co.,* 235 Wis. 403, 291 N.W. 810 (1940); *Washburn v. Skogg,* 204 Wis. 29, 233 N.W. 764 (1930).

[10] *Wannmacher v. Baldauf Corp.,* 262 Wis. 523, 55 N.W.2d 895 (1952).

[11] *Frion v. Coren,* 13 Wis. 2d 300, 108 N.W.2d 563 (1961).

[12] *Bellmann v. Nat'l Container Corp. of Mich.,* 5 Wis. 2d 318, 92 N.W.2d 762 (1958).

repair defects into structural defects.' " *Barry*, 2000 WI App 168, ¶ 14. Thus, because the accident was attributable to the failure to safely repair or maintain the steps rather than a defect in the original structural design or construction of the steps, the law requires proof of actual or constructive notice.

¶ 31. Barry analogizes this case to *Candell v. Skaar*, 3 Wis. 2d 544, 89 N.W.2d 274 (1958). There, the plaintiff fell on a set of outdoor steps that were not finished with a non-slippery surface as required by regulatory agency orders. *Id.* at 548. Barry argues that there is no difference between a step that is unsafe because it lacks a non-slip surface and a step that is unsafe because it has a loose nosing. A stairway that is constructed without a regulation non-slip surface is properly characterized as a defect in the stairway's design. The same cannot be said for a loose nosing strip that was placed on a stairway sometime *after* its original construction. There may be a factual dispute about whether the nosings became loose due to improper installation (by the subcontractor) or improper maintenance (by the property owner), but that factual dispute does not affect the legal classification of the defect for purposes of determining whether notice is required.

¶ 32. Our conclusion that a "structural defect" relates to a breach of the duty to safely design and construct while an "unsafe condition associated with the structure" relates to a breach of the duty to repair or maintain is consistent with the logic behind the notice requirement. In cases of structural defect, it makes perfect sense that no notice should be required. However, in order to fulfill the duty to repair or maintain, the property owner or employer must have actual or constructive notice of the hazardous condition requiring repair or maintenance.

IV

¶ 33. Because the loose nosing was an "unsafe condition associated with the structure" rather than a "structural defect," the circuit court erred by failing to instruct the jury on the notice issue. Where actual or constructive notice is required, the supplemental jury instruction is given:

> **[Note: The following paragraph should not be given where the defect is a structural defect.**
> To find that (defendant) failed to (construct) (repair) or (maintain) the premises in question as safe as the nature of the place reasonably permitted, you must find that (defendant) had actual notice of the alleged defect in time to take reasonable precautions to remedy the situation or that the defect existed for such a length of time before the accident that (defendant) or its employees in the exercise of reasonable diligence (this includes the duty of inspection) should have discovered the defect in time to take reasonable precautions to remedy the situation. However, this notice requirement does not apply where (defendant)'s affirmative act created the defect.]

Wis JI—Civil 1900.4. As indicated, this instruction is *not* given where the defect is structural. *Id.* The circuit court did not give the supplemental instruction in this case because it concluded that the loose nosing was structural.

¶ 34. The parties dispute the appropriate remedy for this error. Ameritech argues that Barry is not entitled to a new trial on liability because his strategic choices in the circuit court—arguing that the loose nosing was a "structural defect"—prevented the notice instruction from being given. Barry argues that a new

576

trial is necessary in the interest of justice because the real controversy has not been tried.

¶ 35. We have discretionary authority to order a new trial under Wis. Stat. § 751.06:

> In an appeal in the supreme court, if it appears from the record that the real controversy has not been fully tried, or that it is probable that justice has for any reason miscarried, the court may reverse the judgment or order appealed from, regardless of whether the proper motion or objection appears in the record, and may direct the entry of the proper judgment or remit the case to the trial court for the entry of the proper judgment or for a new trial. . . .

The statute specifies two circumstances in which this discretionary authority may be invoked: 1) when the real controversy has not been fully tried, and 2) when justice has probably miscarried. *Morden v. Cont'l AG*, 2000 WI 51, ¶ 88, 235 Wis. 2d 325, 611 N.W.2d 659.

¶ 36. In *Vollmer v. Luety*, 156 Wis. 2d 1, 20, 456 N.W.2d 797 (1990), we identified jury instruction and verdict form error as falling within the ambit of the statute, even where the error was waived. Specifically, we held that "where an instruction obfuscates the real issue or arguably caused the real issue not to be tried, reversal would be available. . . ." *Id.* at 22.

¶ 37. In *Air Wisconsin, Inc. v. North Central Airlines, Inc.*, 98 Wis. 2d 301, 296 N.W.2d 749 (1980), we concluded that the use of an erroneous jury instruction prevented a "full, fair trial of the issues." *Id.* at 318. More recently, in *State v. Perkins* we noted that insufficient jury instructions may result in a controversy not being fully tried, therefore warranting a new trial.

577

*State v. Perkins*, 2001 WI 46, ¶ 49, 243 Wis. 2d 141, 626 N.W.2d 762.

¶ 38. We conclude here that a new trial is warranted because the jury was not given the required supplemental instruction and therefore decided the case based upon an erroneous statement of law. We cannot say how a properly instructed jury might have decided the notice issue. The question of whether Ameritech had notice of the loose nosing goes to the heart of Ameritech's liability for Barry's injuries in this case. The jury did not consider the notice issue at all, because it was not told to do so. As such, the case was not fully tried.

## V

¶ 39. Barry also argues that because Ameritech's duty under the safe place statute was non-delegable, *see Dykstra v. Arthur G. McKee & Co.*, 100 Wis. 2d 120, 132, 301 N.W.2d 201 (1981), any causal negligence attributed to Burgmeier should be imputed to Ameritech. Ameritech disagrees, noting the general rule that one who hires an independent contractor is not liable for the negligence of the independent contractor. *See Smith v. Milwaukee Builders' & Traders' Exch.*, 91 Wis. 360, 64 N.W. 1041 (1895).

¶ 40. *Smith* is distinguishable because it states the general common law rule. The claim against Ameritech was brought specifically under the safe place statute, which, as we have discussed, imposes duties beyond the common law.

¶ 41. In some situations, tort law imposes liability upon one who was not negligent, but who, because of the nature of the enterprise and his or her relationship to the plaintiff, has a duty that cannot be

delegated. W. Page Keeton et al., *Prosser and Keeton on the Law of Torts* § 71, at 511 (5th ed. 1984). A non-delegable duty may be imposed by contract, franchise or charter, the common law, or statute.

¶ 42. The duties imposed on employers and property owners under the safe place statute are non-delegable. *Novak v. City of Delavan*, 31 Wis. 2d 200, 207, 143 N.W.2d 6 (1966); *Criswell v. Seaman Body Corp.*, 233 Wis. 606, 290 N.W. 177 (1940). "[T]he person who has that duty [under the safe place statute] cannot assert that another to whom he has allegedly delegated the duty is to be substituted as the primary defendant in his stead for a violation of safe place provisions. *Under any circumstance, it is the owner or the employer who must answer to the injured party*." *Dykstra*, 100 Wis. 2d at 132 (emphasis added).

¶ 43. Barry's safe place statute claim against Ameritech is separate and distinct from Ameritech's claim for contribution against Burgmeier. *See State Farm Mut. Auto Ins. Co. v. Schara*, 56 Wis. 2d 262, 201 N.W.2d 758 (1972). Ameritech's duty under the safe place statute is non-delegable, and therefore Ameritech must answer to Barry for any violation of that duty regardless of whether another party contributed to the violation. That Ameritech may have contribution rights against Burgmeier to the extent of Burgmeier's negligence does not diminish the nature of Ameritech's statutory duty to the plaintiff. *See Dykstra*, 100 Wis. 2d at 132 (safe place statute duties are non-delegable, and "whether the owner or employer is to be made financially whole from another source by principles of law or contract is an entirely different question").

¶ 44. The jury was properly instructed to determine the percentage of negligence attributable to Burgmeier in this case, despite the fact that Ameritech's duty arose under the safe place statute and Burgmeier's under the common law. *See Payne v. Bilco Co.*, 54 Wis. 2d 424, 432, 195 N.W.2d 641 (1972). Indeed, it was necessary to do so in order to properly apportion Burgmeier's negligence for purposes of Ameritech's claim for contribution. However, the apportionment of Burgmeier's negligence is only relevant to Ameritech's claim for contribution. Because Ameritech's duties under the safe place statute were non-delegable, upon retrial, Burgmeier's negligence, if any, should be imputed to Ameritech.

## VI

¶ 45. We need not address Barry's final two arguments. Our decision in *Matthies v. Positive Safety Co.*, 2001 WI 82, 244 Wis. 2d 720, 628 N.W.2d 842, concluded that retroactive application of Wis. Stat. § 895.045 is unconstitutional. Second, Barry's challenge to the jury's finding of contributory negligence is rendered irrelevant by our remand for a new trial on the issue of liability.

¶ 46. We conclude that the loose nosing that caused Barry's fall was an "unsafe condition associated with the structure" rather than a "structural defect." Accordingly, Barry was required to prove that Ameritech had actual or constructive notice of the condition in order to establish safe place statute liability. Because the jury was not instructed on the notice issue, it could not give proper legal or factual consideration to the liability question. We remand for a new trial on the issue of liability.

*By the Court.*—The decision of the court of appeals is reversed, and the cause is remanded to the circuit court for further proceedings consistent with this opinion.