Marie K. WAGNER, Dick Wagner and WestBend Mutual Insurance Company, Plaintiffs,

v.

CINCINNATI CASUALTY COMPANY and Corporate Contractors, Inc., Defendants-Appellants,

MID-CITY DEVELOPMENT CORP., Defendant-Respondent.

Court of Appeals

*No. 2010AP1195. Submitted on briefs March 7, 2011. —Decided May 19, 2011.*

2011 WI App 85

(Also reported in 800 N.W.2d 27.)

On behalf of the defendants-appellants, the cause was submitted on the briefs of *Thomas A. Cabush* and *Patti J. Kurth* of *Kasdorf, Lewis & Swietlik, S.C.*, Milwaukee.

On behalf of the defendant-respondent, the cause was submitted on the brief of *John J. Laffey*, *Steven F. Stanaszak* and *Kristina C. Lemanski* of *Whyte Hirschboeck Dudek, S.C.*, Milwaukee.

Before Lundsten, Higginbotham and Blanchard, JJ.

¶ 1. BLANCHARD, J. This case arises under the safe-place statute, WIS. STAT. § 101.11(1) (2009–10).[1] Marie Wagner alleges that she was injured in the following way while sitting at her desk at work. Behind her desk was a double-hung window, meaning that it had an upper sash and a lower sash. The lower sash of the window allegedly came loose at its top and sides, and blew into the office, striking and injuring Wagner's head and neck.

¶ 2. Wagner and her husband brought this personal injury action, naming as defendants the company

---

[1] All references to the Wisconsin Statutes are to the 2009–10 version unless otherwise noted. The safe-place statute was enacted in 1911, and has been amended. We cite case law interpreting the statute as it has existed at various times since 1911. However, the amendments do not matter to this opinion, because we cite only case law interpreting provisions that appear in the 2009–10 version.

that had recently installed the window (Corporate Contractors, Inc., hereinafter, "the contractor") and the company that owns the office building (Mid-City Development Corp., hereinafter, "the building owner"). The Wagners alleged common-law negligence by the contractor in installing the window. As to the building owner, the Wagners alleged safe-place liability under Wis. Stat. § 101.11(1). Relying on the language of that statute, the Wagners alleged that the owner failed "to construct, repair and maintain the window . . . so as to render it [as] safe as [its] nature would reasonably permit."

¶ 3. The building owner moved for summary judgment, arguing that the undisputed facts showed that it did not have actual or constructive notice of the hazardous window, that the hazardous window was an "unsafe condition," and therefore, that the building owner could not be held liable because, under the safe-place statute, actual or constructive notice must be proved to impose liability for an "unsafe condition." The circuit court agreed on each point, and granted summary judgment in favor of the building owner, thereby dismissing it from the case.

¶ 4. The contractor appeals, seeking to keep the building owner in the case and preserve the contractor's right to contribution from the building owner. The contractor challenges the circuit court's view that the hazardous window was, under the safe-place statute, an "unsafe condition," rather than a "structural defect."[2]

[2] The contractor, but not the Wagners, opposed the building owner's motion for summary judgment. Although the contractor did not file a cross-claim for contribution against the building owner, the contractor nonetheless opposed summary judgment in an effort to preserve its right to contribution from the owner. The court permitted the contractor to submit evidence and argue against summary judgment.

¶ 5. We conclude that the owner was not entitled to summary judgment because there are disputed facts regarding the hazardous condition of the window. When those disputed facts are viewed in the light most favorable to the contractor, there is a material factual dispute that prevents summary judgment. We conclude that because the hazard, so far as the summary judgment record discloses, may have been the result of faulty installation of a replacement window, it was a "structural defect." It follows that there may be no need to prove that the owner had actual or constructive knowledge of the hazard, and that the owner should not have been dismissed from the case. Accordingly, we reverse the order of dismissal and remand.[3]

## Background

¶ 6. Because the context here is summary judgment, and we view the facts in a light most favorable to the non-moving party, here the contractor, we recount the facts that support the contractor's theory.

¶ 7. Approximately three months before the accident, the contractor installed the exterior, double-hung window as a replacement for an existing window. The sashes of such a window are to be pushed up and down

---

[3] An oddity in this appeal is that the contractor's summary judgment argument relies on facts indicating that fault lies with the contractor, namely faulty installation. That is, the contractor's argument that the building owner should remain in the case—because the owner may be liable, even absent actual or constructive knowledge of the hazard—relies on facts supporting the theory that the contractor improperly installed the window. In light of the posture of this case and the issues raised on appeal, we do not have the option of addressing the implications of the contractor advancing a view of the evidence that seemingly creates liability for the contractor.

for air, but can be tilted in for cleaning purposes. The lower sash is held in place, in part, by sash retainer pins, which are disengaged for the cleaning function. In addition, the lower sash has spring-loaded window latches at its top, which also serve to hold it in place.

¶ 8. At the time of the accident, Wagner was working at her desk. The lower sash of the window allegedly came "loose" at its top and sides, and "blew in" to the office, striking her on the neck from behind, injuring her.

¶ 9. The Wagners' expert opined that the top of the lower sash pivoted inward without warning to Wagner, and released from its guides and the frame, in part because the contractor failed to install the window properly. The expert testified that, probably due to improper tightening of screws and inadequate shimming, the installer left excessive space between the top of the lower sash and the window jamb. This allegedly involved the installer improperly allowing the jambs, and the tracks on the jambs, to "bow" outward, so that the sash retainer pins did not engage properly with the tracks at the top of the lower sash. This condition, in combination with the fact that the sash was not latched at its top, "would make the window susceptible to being blown [into the office] on a windy day." The excessive space creating this hazard should have been visible after the window was installed.

¶ 10. The circuit court concluded that, under the case law interpreting the safe-place statute, the alleged hazard was not a "structural defect," but was instead an "unsafe condition associated with the structure," and found no material dispute regarding notice to the building owner, resulting in summary judgment for the building owner, which is challenged by the contractor.

## Standard of Review

¶ 11. We review the grant or denial of summary judgment de novo, applying the same standard as the trial court. *Green Spring Farms v. Kersten*, 136 Wis. 2d 304, 315, 401 N.W.2d 816 (1987). A party is entitled to summary judgment if there are no disputed issues of fact and that party is entitled to judgment as a matter of law. Wis. Stat. § 802.08(2). The materials offered by a party moving for summary judgment should be " 'carefully scrutinize[d],' " and summary judgment is not available " 'unless the moving party demonstrates a right to a judgment with such clarity as to leave no room for controversy.' " *Racine County v. Oracular Milwaukee, Inc.*, 2010 WI 25, ¶ 25, 323 Wis. 2d 682, 781 N.W.2d 88 (citation omitted).

¶ 12. We reverse a decision granting summary judgment if either (1) the trial court incorrectly decided a legal issue, or (2) material facts are in dispute. *Coopman v. State Farm Fire & Cas. Co.*, 179 Wis. 2d 548, 555, 508 N.W.2d 610 (Ct. App. 1993). Like the trial court, we are prohibited from deciding issues of fact; our inquiry is limited to a determination of whether a factual issue exists in the context of the underlying legal dispute. *Id.* at 555–56.

¶ 13. Statutory interpretation is a question of law, also reviewed de novo, although we benefit from the lower court's analysis. *Megal Dev. Corp. v. Shadof*, 2005 WI 151, ¶ 8, 286 Wis. 2d 105, 705 N.W.2d 645.

## Discussion

¶ 14. Under the safe-place statute, the owner of a public building[4] "shall . . . construct, repair or maintain" the building so as to "render the same safe," WIS. STAT. § 101.11(1), where safe "means such freedom from danger to the life, health, safety or welfare of employees or frequenters . . . as the nature of" the building "will reasonably permit." § 101.01(13).

¶ 15. Although the safe-place statute speaks in terms of the obligation of the owner to "construct, repair or maintain," the case law explains that the correct focus of the inquiry is on the condition of the structure that caused the injury. *Barry v. Employers Mut. Cas. Co.*, 2001 WI 101, ¶ 21, 245 Wis. 2d 560, 630 N.W.2d 517. "[W]hile the statute refers to the *duties* imposed upon employers and owners (to construct, repair and maintain a safe place of employment or public building), the cases refer to the *conditions* that arise from the breach of those duties (structural defects and unsafe conditions associated with the structure)." *Id.*, ¶ 24.

¶ 16. At issue in this appeal are two of the three categories of unsafe property hazards: " 'structural defects' " and " 'unsafe conditions associated with the structure,' " but not the third, ' "unsafe conditions unassociated with the structure." ' *See id.*, ¶ 21 (quoting HOWARD H. BOYLE, JR., WISCONSIN SAFE-PLACE LAW REVISED 139 (1980)); *see also Barry*, 245 Wis. 2d 560, ¶ 21 n.4.

---

[4] The building owner in this appeal does not contest that it is the owner of a "public building" under the safe-place statute. In this context, a "public building" is not what it sounds like, a building owned by the public. Instead, the definition covers a wide range of privately owned structures that are visited by members of the public. *See* WIS. STAT. § 101.01(12).

¶ 17. The legal determination of which category an alleged hazard falls into dictates whether the plaintiff has an obligation to prove that the property owner had constructive or actual notice of the hazard. *Id.*, ¶¶ 22–23. If a hazardous condition is categorized as a *structural defect*, the property owner is liable for injuries resulting from the defect "regardless of whether he or she knew or should have known that the defect existed." *Id.*, ¶ 22. In contrast, if the condition is deemed *an unsafe condition associated with the structure*, the owner "must have actual or constructive notice of the defect." *Id.*, ¶ 23 (citing *Pettric v. Gridley Dairy Co.*, 202 Wis. 289, 293, 232 N.W. 595 (1930)).[5]

¶ 18. Thus, the question presented here is this: Is an exterior replacement window alleged to be hazardous due to faulty installation a "structural defect," or instead "an unsafe condition associated with the structure," under the safe-place statute? The parties have not identified, and we have not located, precedent that directly answers this question.

¶ 19. Although there is no controlling precedent, the framework for our analysis is largely established by detailed discussion of the safe-place statute in *Barry*,

---

[5] The court in *Pettric v. Gridley Dairy Co.*, 202 Wis. 289, 293, 232 N.W. 595 (1930) stated, in relevant part:

It would seem that in order to make an employer liable for defects *in the nature of repair or maintenance* he should have either actual or constructive notice of such defects. Natural principles of justice would seem to require that . . . . We therefore consider that the legislative purpose will be given full scope if the language of the statute be interpreted in accordance with these natural principles of justice, and hold that the duty of the employer *to repair or maintain* his place of employment does not arise until he has either actual or constructive notice of the defect.

(Emphasis added.)

including the court's summary of the distinction under the safe-place statute between a "structural defect" and an "unsafe condition associated with the structure." *Barry*, 245 Wis. 2d 560, ¶¶ 25–33.

██

¶ 20. The general rule that guides us was summarized in *Barry*:

> A defect is structural if it arises "by reason of the materials used in construction or from improper layout or construction." Thus, unlike a condition associated with the structure, which may develop over time, a structural defect is *a hazardous condition inherent in the structure by reason of its design or construction.*

*Id.*, ¶ 28 (emphasis added, citations omitted). Thus, one distinguishing characteristic of a "structural defect" is that it is a hazard that flows from a faulty design or from the faulty execution of a design.

¶ 21. We glean from this general rule in *Barry*, and the case law we discuss below, that a "structural defect" arises from design or construction flaws when a building element is put in place, whether as an original part of a structure or as a replacement. In contrast, "unsafe conditions associated with the structure" are those that arise from repair or maintenance or a failure to repair or maintain an element of a building that was previously safe.

*Hazards Deemed "Structural Defects"*

██

¶ 22. Some "structural defects" involve omissions. For example, the omission of a regulation non-slip surface from the finish of a stairway is a "structural

defect," because it is "properly characterized as a defect in the stairway's design." *Id.*, ¶ 31 (referencing *Candell v. Skaar*, 3 Wis. 2d 544, 89 N.W.2d 274 (1958)).[6] Similarly, "structural defect" status has been applied to omissions of safety features, such as a handrail along a staircase, *Harnett v. St. Mary's Congregation*, 271 Wis. 603, 610, 74 N.W.2d 382 (1956), and a railing around a trapdoor, *Wannmacher v. Baldauf Corp.*, 262 Wis. 523, 539c, 57 N.W.2d 745 (1953), *modifying* 262 Wis. 523, 55 N.W.2d 895 (1952).

¶ 23. However, "structural defects" need not involve the complete absence of an element. For example, a balcony railing that is not high enough to prevent an apartment tenant from falling over the railing is a

---

[6] One factor that appeared significant to the court in *Candell v. Skaar*, 3 Wis. 2d 544, 89 N.W.2d 274 (1958), and also to courts in some of the other cases cited in the text, although not an apparent focus of the *Barry* court, was the existence of detailed orders of the Wisconsin Industrial Commission, which no longer exists under that name, prescribing standards applicable to construction, repair, and maintenance of public buildings to render them safe. In *Candell* this included reference by the commission to the need for a nonslippery surface. *Candell*, 3 Wis. 2d at 549. These safety orders were deemed to create liability under the safe-place statute. *See, e.g.*, *Wannmacher v. Baldauf Corp.*, 262 Wis. 523, 539c, 57 N.W.2d 745 (1953), *modifying* 262 Wis. 523, 55 N.W.2d 895 (1952). However, we read *Barry v. Employers Mutual Casualty Co.*, 2001 WI 101, 245 Wis. 2d 560, 630 N.W.2d 517, as applying the safe-place statute only to the reported facts in these cases, including *Candell*, without regard to the existence or non-existence of safety orders, because the *Barry* court took no special notice of these orders in its analysis. In the instant appeal neither party brings our attention to any statute, regulation, or order relevant to the installation of safe windows.

"structural defect." *Frion v. Coren*, 13 Wis. 2d 300, 302–04, 108 N.W.2d 563 (1961). Likewise, a false ceiling used as a work area that is not strong enough to support a worker's weight is a "structural defect." *Bellmann v. National Container Corp. of Mich.*, 5 Wis. 2d 318, 321, 324–25, 92 N.W.2d 762 (1958) (areaway in which accident occurred was "obviously unsafe as a place of employment"; it was irrelevant that "other builders construct unsafe areas" similar in nature).

¶ 24. Another example of a "structural defect" is a poorly designed floor drain. In *Mair v. Trollhaugen Ski Resort*, 2006 WI 61, ¶¶ 24–26, 291 Wis. 2d 132, 715 N.W.2d 598, a bathroom floor drain was alleged to be hazardous because visitors might trip or fall due to its design, placement, and the condition of the surrounding floor. The *Mair* court rejected the argument that failure over time to modify the drain to comply with safety standards created an unsafe condition, because that failing did not constitute "falling out of repair or not being maintained in a safe manner." *Id.*, ¶ 25.

¶ 25. The building owner in this case contends that only parts of a "building's original construction" may be deemed "structural defects." The owner believes this view is supported by the *Barry* court's use of the word "original" in such phrases as "a defect in the *original* structural design or construction," *see Barry*, 245 Wis. 2d 560, ¶ 30 (emphasis added), and "*after* its *original* construction." *Id.*, ¶ 31 (second emphasis added). However, we do not take the court to have limited "structural defects" to those designs or acts of construction *original to a structure*. Read in context, the *Barry* court used the term "original" to distinguish a staircase that was in place from vinyl nosings that were added to that staircase. *See id.*, ¶¶ 30–31. The use of the term "original" was a reference to the staircase

before there was a need to repair it. There is no reason to think that the result in *Barry* would have been different if the originally safe stairs were replacements of the stairs installed when the building was first erected.

¶ 26. Moreover, it would not be consistent with the purpose of the safe-place statute to distinguish between "structural defects" and "unsafe conditions" depending upon whether a potential hazard involved a component included in the original construction of the structure. All structures can be, and many are, altered over time. New wings and rooms are added, walls torn down, staircases are replaced, new walls are added. We discern no reason why liability should depend on whether a feature of a structure that is dangerous due to faulty construction was part of the structure from "day one," or was added later.

¶ 27. Consistent with this view, our supreme court has not applied what would be, in most cases, an exceptionally simple "structural defects" test of asking whether the alleged defect was part of the structure when it was brand new. For example, the court in *Barry* would have had no reason to engage in extensive analysis as to whether the hazard should be categorized as a "structural defect" if the question were resolved simply by asking whether the building feature was part of the structure when first erected, which the nosing plainly was not.

¶ 28. Thus, our review of the cases indicates that "structural defect" hazards arise from design or construction flaws when a building element is put in place, regardless whether it is an original part of a structure or is a replacement.

## *Hazards Deemed "Unsafe Conditions Associated With The Structure"*

¶ 29. Hazards that have been deemed "unsafe conditions" are those that arise from a repair or maintenance or from a failure to repair or maintain an element or feature of a building that was previously safe.

¶ 30. *Barry* itself involves a failure to maintain. In that case the nosings were added to treads of a stairway to hold carpeting in place. The *Barry* plaintiff fell when he tripped on a part of an added nosing, which had "become loose and . . . partially detached." *Id.*, ¶¶ 7–8. The court found this to be an easy case, observing that, if this hazard *arising during a repair* were categorized as a "structural defect," it would mean that *all* maintenance and repair defects could be deemed structural defects. *Id.*, ¶ 30. The *Barry* court rejected a comparison between the loose nosing added to treads on a stairway in order to repair a carpet, which the court determined to be an "unsafe condition," and the lack of a non-slip finish in *Candell*, discussed above, which the *Barry* court determined to be a structural defect because it was a design defect. *Id.*, ¶ 31.

¶ 31. Another example of an "unsafe condition" is a theater seat that was "originally safe," but becomes an "unsafe condition" when a missing seat cushion is not replaced. *Boutin v. Cardinal Theatre Co.*, 267 Wis. 199, 202, 64 N.W.2d 848 (1954). The failure to maintain the seat caused injury to the plaintiff when he fell to the floor after attempting to sit on the seat. *Id.* at 201.

¶ 32. Similarly, in each of the following examples, there was a failure to maintain a building in a safe condition: the failure to keep a restroom light turned on while a building is in use, *Zimmers v. St. Sebastian's Congregation of Milwaukee*, 258 Wis. 496, 501, 46 N.W.2d 820 (1951); the failure to securely fasten the screen on a

window in the children's ward of a hospital, *Wright v. St. Mary's Hospital of Franciscan Sisters*, 265 Wis. 502, 503, 506, 61 N.W.2d 900 (1953); and the failure to maintain safe electrical wiring of an elevator, *Kaczmarski v. F. Rosenberg Elevator Co.*, 216 Wis. 553, 554, 560, 257 N.W. 598 (1934).

### The Hazardous Condition In This Case Is A "Structural Defect"

¶ 33. From the guidance provided by *Barry* and the examples above, we conclude that the hazardous condition in this case most closely resembles the facts of the "structural defect" cases. Under the view of the facts most favorable to the contractor for purposes of the summary judgment motion, the contractor created the window hazard through faulty installation, and not as part of a repair or maintenance effort. It is alleged that the window was prone to falling dangerously into the work place from the time of its installation. In this way, it resembles the too-low balcony railing in *Frion* and the too-weak false ceiling in *Bellmann*, both of which were hazards from the start. This contrasts with features of a structure, such as the stairs in *Barry* and the theater seat in *Boutin*, which were installed safely and then developed into a hazard (loose nosing, missing cushion).[7]

--------

[7] The cases cited by the contractor involving the "integrated system" exception to the economic loss doctrine are not applicable in this context. The contractor cites these cases for the proposition that windows are integral parts of structures, and therefore a window defect is a "structural defect." *See Linden v. Cascade Stone Co., Inc.*, 2005 WI 113, ¶¶ 27–28, 283 Wis. 2d 606, 699 N.W.2d 189 (damage caused by defective stucco and roof shingling harmed only other components of house); *Bay Breeze Condo. Ass'n, Inc. v. Norco Windows, Inc.*, 2002 WI App 205, 257

¶ 34. The building owner contends that "the window that struck Ms. Wagner was added to the building as part of a remodeling project," like the "added" nosing in *Barry*. However, the window in this case was not an addition to an existing feature of the building—it fully replaced the prior window. Bearing in mind the caution in *Barry* that general formulations in this context are not easily crafted, *Barry*, 245 Wis. 2d 560, ¶ 24, we note that, at least in some contexts, reliance on the concept of "addition" is not helpful. It will often be difficult to distinguish between an addition that is part of a repair and an addition that adds an entirely new building element. This is because work on a building typically involves "additions" (as well as subtractions) of items and materials. In any case, however, in this instance it could not reasonably be said that the window replacement was a repair-like addition to the structure, as opposed to a construction-like alteration of it.

### Building Owner "Control" Over Window Installation

¶ 35. The building owner makes a separate argument that it asserts should be dispositive on the sum-

Wis. 2d 511, 651 N.W.2d 738 (damage caused by defective windows harmed only other components of house). These cases are based on considerations specific to the economic loss doctrine. The conclusion that a home buyer considers the windows of the house to be part of a single, integrated system or structure they are purchasing, for purposes of the economic loss doctrine, adds nothing to the analysis in this case. It is not disputed that the allegedly hazardous window in the instant case should be considered part of the building. The legal question is whether the hazard it presented should be categorized as a "structural defect" or as an "unsafe condition" under the safe-place statute.

mary judgment issue. The building owner contends that it cannot be liable under the safe-place statute because it turned over "the control and custody of a place that [was] safe at the time to a contractor who then create[d] a hazardous condition." For this proposition, the building owner cites *Potter v. City of Kenosha*, 268 Wis. 361, 68 N.W.2d 4 (1955). We reject this argument because the facts of *Potter* do not remotely resemble the facts of this case, and relevant case law does not support this argument.

¶ 36. In *Potter*, a municipality entered into a contract for installation of a sewer. *Id.* at 363. The contractor dug a trench, and Potter was among employees of the contractor who entered the trench to dig. *Id.* Due to the absence of shoring to support a trench wall, a bank caved in, killing Potter. *Id.* Our supreme court held that the city could not have employer liability under the safe-place statute, because the hazard was one that arose from a trench and "the city had not contracted for a trench; it contracted for a sewer." *Id.* at 372. The hazard presented by inadequate shoring in the trench was one created for the workers under the "full supervision and control" of the contractor. *Id.* at 373. In sharp contrast, in this case a replacement window was precisely what the building owner contracted for, and Marie Wagner was injured while working in space that she was entitled to assume was free of structural defects.

¶ 37. More on point is the holding of such cases as *Barry*, that a building owner's duty under the safe-place statute "is non-delegable, and therefore [the building owner] must answer to [a plaintiff] for any violation of that duty regardless of whether another party contributed to the violation." *Barry*, 245 Wis. 2d 560, ¶ 43. The *Barry* court pointed out that the rule against delegation of the safe-place duty is firm, and is not limited by the

534

right of contribution. *Id.* There is no dispute that the building owner was responsible for arranging for the replacement of the window at issue, and it cannot delegate its responsibility under the safe-place statute for installation of windows that are as safe as their nature reasonably permits. *Id.*

## Conclusion

¶ 38. For these reasons, we conclude that summary judgment rested on an incorrectly decided legal decision categorizing the hazard, that material facts remain in dispute under the correct category of hazard, and that the building owner cannot delegate its safe-place statute duty to the contractor that installed the window in an allegedly hazardous manner. Accordingly, we reverse and remand for further proceedings consistent with this opinion.

*By the Court.*—Order reversed and cause remanded for further proceedings consistent with this opinion.