COURT OF APPEALS
DECISION
DATED AND FILED

August 21, 2025

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2024AP543**

STATE OF WISCONSIN

Cir. Ct. No. 2021CV3069

IN COURT OF APPEALS
DISTRICT IV

WILLIAM B. LARIMORE,

PLAINTIFF-APPELLANT,

V.

MIDLAND PLASTICS INC.,

DEFENDANT-THIRD-PARTY PLAINTIFF-RESPONDENT,

ROHDE ENTERPRISES, DAVID O. ROHDE, SHIRLEY C. ROHDE, AND KITTLESON CONCRETE CONSTRUCTION, INC.,

DEFENDANTS-THIRD-PARTY DEFENDANTS-RESPONDENTS.

APPEAL from an order of the circuit court for Dane County: RHONDA L. LANFORD, Judge. *Affirmed in part, reversed in part and cause remanded for further proceedings*.

Before Graham, P.J., Nashold, and Taylor, JJ.

¶1 GRAHAM, P.J. This appeal concerns injuries that William Larimore sustained in January 2021, when he slipped and fell on ice on the premises of a commercial building. Larimore appeals a circuit court order that granted summary judgment in favor of David Rohde, Shirley Rohde, Rhode Enterprises,[1] and Midland Plastics, Inc. on Larimore's safe place claim, and to those defendants and Kittleson Concrete Construction, Inc. on Larimore's common law negligence claim. The court dismissed all of Larimore's claims against all defendants on the grounds that they were barred by the statute of repose found in WIS. STAT. § 893.89 (2023-24).[2] We conclude that there is no genuine dispute that Larimore's safe place claim is barred by the statute of repose and that the court properly granted summary judgment on that claim. We further conclude that the court erred in dismissing Larimore's negligence claim because he has advanced a theory of negligent causation that is not premised on a negligent failure to modify a structural defect. Accordingly, we affirm the dismissal order in part and reverse it in part, and we remand to the circuit court for further proceedings consistent with this opinion.

## BACKGROUND

¶2 The following facts are derived from the pleadings, depositions, and the parties' answers to interrogatories, and are undisputed for the purposes of summary judgment unless otherwise noted.

---

[1] The parties appear to agree that Rhode Enterprises is a d/b/a name used by David and Shirley Rohde. We refer collectively to this group of defendants as "Rhode Enterprises."

[2] All references to the Wisconsin Statutes are to the 2023-24 version.

¶3     Midland is a business located in Monona, Wisconsin that sells items including plexiglass sheets.  At all times relevant to this appeal, Midland leased a portion of a commercial building from Rohde Enterprises, and Rohde Enterprises contracted with Kittleson Construction to take care of snow and ice removal at that property.  We sometimes refer collectively to Midland, Rohde Enterprises, and Kittleson Construction as the "defendants."

¶4     One winter day in 2021, Larimore agreed to help a friend pick up some large plexiglass sheets from Midland.  Larimore arrived during business hours, but the front entrance was locked and he was directed to a loading area in the back of the building.  As Larimore approached an overhead door in the loading area, he slipped and fell on ice.  Larimore fractured his ankle as a result of the fall, and surgery was required to repair it.

¶5     The parties agree that the ice on which Larimore slipped formed as a result of the position of a downspout, which was adjacent to the overhead door in the loading area.  Specifically, the parties agree that the downspout drained water from the roof and deposited it onto the pavement near the loading area, where it froze.  It is undisputed that the downspout was installed years ago, before Rhode Enterprises bought the building in 2002, and that the downspout had not been modified since.  It is also undisputed that none of the defendants salted or sanded the loading area on the day of Larimore's fall.

¶6     Larimore filed a complaint that sought to establish that Midland is liable for his injuries.  The complaint purported to state two different causes of action against Midland: one for violating the safe place statute and a second for common law negligence.  Midland impleaded Rohde Enterprises, which impleaded Kittleson Construction.  Larimore then filed an amended complaint,

which is the operative complaint for purposes of this appeal, and which alleges safe place and negligence claims with respect to both Midland and Rohde Enterprises, and a negligence claim with respect to Kittleson Construction. The defendants all denied liability, and each of the defendants sought indemnification and contribution from the other defendants in the event that it was found liable.

¶7 The case proceeded to discovery, and Larimore named Zach Sundby, a snow and ice removal contractor, as his expert witness. In his report, Sundby stated that he had been trained to look for areas where ice is likely to occur, particularly in areas where there is a lot of pedestrian traffic. Sundby opined that ice was likely to form in the area that Larimore fell as a result of the placement of the downspout, and that the area should have been salted or sanded based on its proximity to the overhead loading door and a pedestrian door.

¶8 The defendants took Sundby's deposition, and he provided the following testimony. The design of the downspout was defective because it resulted in ice forming in an area that would be frequented by customers. That hazard could have been avoided by rerouting the downspout so that it would discharge water into a nearby grassy area. The materials needed to reroute the downspout could have been purchased for less than $20.

¶9 Depositions were also taken from key employees and agents of Midland, Rohde Enterprises, and Kittleson Construction. These depositions primarily focused on the varying practices that the defendants had with regard to snow and ice remediation at the property. As we now explain, it became clear that there were disputes about which of the defendants were responsible for snow and ice removal in the loading area where Larimore fell.

4

¶10     Midland's branch manager, Gordon Gunderson, testified that Midland leased the premises from Rohde Enterprises, and that Rohde Enterprises was responsible for snow removal and salting pursuant to the lease. Midland itself did not have "any policies or procedures for checking on the conditions of ice and snow at the facility," nor did Midland regularly inspect the outside areas. Gunderson was aware that the downspout discharged water on the pavement in the loading area and was aware that customers used that area, and he had observed ice in that area "on occasions."

¶11     David Rohde, who was doing business under the name Rhode Enterprises, testified that he was not physically present in Wisconsin and did not employ a property manager to observe the conditions at the property. With respect to the downspout, Rhode acknowledged that "typically there's a lot of water coming off of that roof" from when the "[s]un shines on the roof and melts the snow," which then "comes down from that downspout" and is deposited on the pavement in the loading area. Rohde testified that he hired Kittleson Construction to handle snow and ice removal and told Kittleson to use "his judgment" about salting and sanding.

¶12     Kittleson Construction's owner, Darin Kittleson, disputed Rohde's account. Kittleson testified that Rohde told him not to salt or sand the area around the downspout because Rohde was worried about cost and damage to the building.

¶13     Rohde Enterprises filed a motion for summary judgment based on the statute of repose found in WIS. STAT. § 893.89. Specifically, Rhode Enterprises argued, the statute of repose "precludes personal injury claims against property owners arising out of any deficient design or construction of an improvement to real property if the action is commenced more than seven years

5

after completion." Rhode Enterprises argued that the design and placement of the downspout is a "structural defect," as that term is used for purposes of the statute of repose, and it relied heavily on Sundby's opinion that "the design and placement of the subject downspout was the cause of [Larimore's] injury."

¶14 Larimore opposed summary judgment. He argued that his claims were not barred by the statute of repose because "Sundby did not opine that the [downspout] was the only cause of Larimore's fall," and the statute of repose "does not preclude claims for damages for other negligent acts that contributed to the existence of a hazardous condition." Larimore argued there was "sufficient evidence" that "Rohde's negligent acts were a cause of the ice" on which Larimore fell, and therefore, summary judgment must be denied.

¶15 Midland eventually joined the summary judgment motion, relying on the fact that the statute of repose protects "occupiers" of property in addition to "owners." *See* WIS. STAT. § 893.89(2). Kittleson Construction did not join the motion and did not seek summary judgment on other grounds.

¶16 The circuit court granted summary judgment in favor of all three defendants based on the statute of repose. The court acknowledged that the failure to clear the ice may have contributed to Larimore's injury. Even so, it stated that the buildup of ice did not occur "in a vacuum," and that the ice was "caused directly by the downspout," which constituted a "structural defect." Because the ice would not have existed but for the structural defect, the court concluded that

the statute of repose barred the safe place and common law negligence claims alike.[3]  Larimore appeals.

## DISCUSSION

¶17     Summary judgment is appropriate if there are no genuine issues of material fact and one party is entitled to judgment as a matter of law.  WIS. STAT. § 802.08(2).  We independently review a grant of summary judgment, using the same methodology as the circuit court.  *Hardy v. Hoefferle*, 2007 WI App 264, ¶6, 306 Wis. 2d 513, 743 N.W.2d 843.  This case also involves issues of statutory interpretation and application.  Interpretation of a statute and its application to a set of facts are questions of law that we review de novo.  *See McNeil v. Hansen*, 2007 WI 56, ¶7, 300 Wis. 2d 358, 731 N.W.2d 273.

### I.  Overview of Legal Principles

¶18     This appeal concerns the interplay between the safe place statute, common law negligence, and the statute of repose, and we begin our analysis by summarizing some key legal principles about these areas of law.  Safe place and common law negligence claims often overlap, but, as discussed below, they "involve different standards of care and different elements of proof."  *Kochanski v. Speedway SuperAmerica, LLC*, 2014 WI 72, ¶31, 356 Wis. 2d 1, 850 N.W.2d 160.  The statute of repose can apply to both types of claims, and can cut off a

---

[3] The circuit court did not explain why its conclusion about the statute of repose, which applies to owners and occupiers of real property, would preclude a negligence claim against Kittleson Concrete, which was neither an owner nor an occupier of the property.  Larimore raises the propriety of the dismissal of the claim against Kittleson Concrete on appeal, and Kittleson Concrete argues that the issue is forfeited because Larimore did not raise that issue in a motion for reconsideration.  We decline to address it on appeal because we reverse the dismissal of the negligence claim against Kittleson Concrete on other grounds.

plaintiff's right to recover under either theory. *Mair v. Trollhaugen Ski Resort*, 2006 WI 61, ¶¶16-18, 291 Wis. 2d 132, 715 N.W.2d 598; *Cristiano v. Heritage Relocation Servs., Inc.*, 2014 WI App 75, ¶1, 355 Wis. 2d 403, 851 N.W. 2d 771.[4]

¶19     We begin with common law negligence, which may be familiar to many readers. A common law negligence claim is founded on a breach of the duty of reasonable care. *Megal v. Green Bay Area Visitor & Convention Bureau, Inc.*, 2004 WI 98, ¶22, 274 Wis. 2d 162, 682 N.W.2d 857. "[I]n Wisconsin, everyone has a duty to everyone else to act with reasonable care," *id.*, and a defendant is negligent when the defendant breaches that duty of care, causing injury, *Kochanski*, 356 Wis. 2d 1, ¶31. Negligence can be based on a broad array of circumstances and conduct, and what constitutes "ordinary" or "reasonable" care in a given situation depends on the particular facts and circumstances.[5] *Hoida, Inc. v. M&I Midstate Bank*, 2006 WI 69, ¶¶31-32, 291 Wis. 2d 283, 306, 717 N.W.2d 17.

¶20     In contrast, the safe place statute is a legislative enactment that imposes a "higher standard of care" on employers and owners of "place[s] of employment" and "public building[s]." *Megal*, 274 Wis. 2d 162, ¶¶9, 22. It

---

[4] Although safe place and common law negligence claims involve different standards of care and different elements of proof, the parties' briefs often collapse the analysis of these causes of action into a single analysis. Because the distinctions between the causes of action matter for purposes of our analysis, we have structured and framed the issues independently of the manner in which they are presented in the parties' briefing. *See Soletski v. Krueger Int'l, Inc.*, 2019 WI App 7, ¶11 n.4, 385 Wis. 2d 787, 924 N.W.2d 207.

[5] *See, e.g.*, *Schuster v. Altenberg*, 144 Wis. 2d 223, 262, 424 N.W.2d 159 (1988) (failure to warn of side effects of medication); *Rieschl v. Wisconsin Michigan Power Co.*, 236 Wis. 116, 121, 294 N.W. 521 (1940) (failure to remove ice); *Denil v. Coppersmith*, 117 Wis. 2d 90, 92-93, 343 N.W.2d 136 (Ct. App. 1983) (failure to appropriately restrain dog); *Physicians Plus Ins. Corp. v. Midwest Mut. Ins. Co.*, 2001 WI App 148, ¶43-44, 246 Wis. 2d 933, 632 N.W.2d 59 (failure to remove tree branches obstructing stop sign).

provides, in relevant part: "Every employer and every owner of a place of employment or public building now or hereafter constructed shall so construct, repair, or maintain such place of employment or public building as to render the same safe." WIS. STAT. § 101.11(1).

¶21 As shown, the safe place statute speaks in terms of the owner's or employer's obligation to "construct, repair, and maintain" the premises, and safe place claims are referred to as a variety of negligence. *Soletski v. Krueger Int'l, Inc.*, 2019 WI App 7, ¶11 & n.4, 385 Wis. 2d 787, 924 N.W.2d 207. Even so, the case law explains that the correct focus of a safe place claim is on the *property condition* that caused the injury. *Id.*; *see also Barry v. Employers Mut. Cas. Co.*, 2001 WI 101, ¶21, 245 Wis. 2d 560, 630 N.W.2d 517. Thus, in contrast to common law negligence claims, safe place claims do not focus on "negligent acts" of persons on a premises, but rather on "unsafe conditions" that are present on a property. *Megal*, 274 Wis. 2d 162, ¶¶9, 23; *see also Hofflander v. St. Catherine's Hosp., Inc.*, 2003 WI 77, ¶91, 262 Wis. 2d 539, 664 N.W.2d 545.[6]

¶22 WISCONSIN STAT. § 893.89(2) is a statute of repose and can foreclose both safe place and common law negligence claims. Specifically, the statute "sets forth the time period during which an action for injury resulting from improvements to real property must be brought," and may bar an action before an injury is discovered or even before it occurs. *Kohn v. Darlington Cmty. Sch.*,

---

[6] We observe that the pattern jury instructions and special verdict found in WIS JI—CIVIL 1900.4 appear to be at odds with the case law cited in this paragraph. That is, although the case law provides that the focus of a safe place claim should be on "unsafe conditions" rather than on "negligent acts," the jury instructions focus on a defendant's actions, and the special verdict asks: "Was (defendant) negligent in failing to (construct) (repair) (maintain) the premises as safe as the nature of its business would reasonably permit?"

2005 WI 99, ¶¶13, 38, 283 Wis. 2d 1, 698 N.W.2d 794. As pertinent here, the statute bars recovery for personal injury claims "arising out of" a "defect in the design" of an "improvement to real property" after the "exposure period":

> [N]o cause of action may accrue and no action may be commenced … against the owner or occupier of the property … after the end of the exposure period, to recover damages … for any injury to the person … arising out of any deficiency or defect in the design, land surveying, planning, supervision or observation of construction of, the construction of, or the furnishing of materials for, the improvement to real property ….

§ 893.89(2). The exposure period is the seven years after the improvement is substantially completed. § 893.89(1).

¶23     That said, there are several enumerated "exceptions" to the statute of repose. *Hocking v. City of Dodgeville*, 2010 WI 59, ¶22, 326 Wis. 2d 155, 785 N.W.2d 398 (citing WIS. STAT. § 893.89(4)(a)-(d)). One is found in § 893.89(4)(c), which provides that the statute of repose "does not apply" when an injury results from "negligence in the maintenance, operation or inspection of an improvement to real property." This is sometimes referred to as the "maintenance exception," and we discuss it in further detail below.

## II.  Analysis of Larimore's Claims

¶24     As noted, the following facts are undisputed for purposes of summary judgment. Larimore was injured when he slipped and fell on a patch of ice in Midland's loading area. The patch of ice formed as a result of the design of the downspout, which transferred water from the roof onto the pavement. The downspout had been in place for years, and had not been altered since it was installed. None of the defendants took any action with regard to salting or sanding in the loading area on the day of Larimore's injury.

¶25 During the summary judgment proceedings in the circuit court, Larimore argued that the patch of ice was an unsafe property condition that gave rise to a safe place claim against Rhode Enterprises and Midland. He also argued that Rhode Enterprises and Midland were negligent in two different respects: for failing to modify the design of the downspout so that it would not discharge water onto the pavement in the loading area, and for failing to take steps to remediate that danger such as salting or sanding the patch of ice after it formed. Rhode Enterprises and Midland argued that all of Larimore's claims are barred by the statute of repose because his injury arose from the defective design of the downspout, and the exposure period for the downspout lapsed long before Larimore's injury occurred. *See* WIS. STAT. § 893.89(2).

¶26 On appeal, Larimore also makes an additional argument about the statute of repose that would apply to his safe place and common law negligence claims alike. Specifically, he argues that the statute of repose is not implicated by his claims because the downspout is not an "improvement to real property." *See* WIS. STAT. § 893.89(2) (addressing injuries "arising out of … improvement[s] to real property"). Larimore acknowledges that he did not raise this threshold argument in the circuit court, and we reject the threshold argument for two reasons. First, it has been forfeited. *See **Shadley v. Lloyds of London***, 2009 WI App 165, ¶25, 322 Wis. 2d 189, 776 N.W.2d 838 (under the forfeiture rule, "issues not presented to the [circuit] court will not be considered for the first time at the appellate level"). Second, even if we were to overlook the forfeiture rule, Larimore does not address significant aspects of the case law defining the meaning

of an "improvement to real property."[7]  *See State v. Pettit*, 171 Wis. 2d 627, 646-47, 492 N.W.2d 633 (Ct. App. 1992) (a court need not consider arguments that are undeveloped).

¶27    Having dispatched with this threshold argument, we now address the specifics of the safe place and common law negligence claims in that order.

### A.  The Safe Place Claims

¶28    As noted, for purposes of a safe place claim, our focus is on the unsafe condition on the premises that caused the injury, rather than on a defendant's allegedly negligent acts.  *Hofflander*, 262 Wis. 2d 539, ¶91; *Megal*, 274 Wis. 2d 162, ¶9.  To prevail on a safe place claim, a plaintiff must prove, at a minimum, an unsafe property condition and a causal connection between the property condition and the injury.  *Correa v. Woodman's Food Mkt.*, 2020 WI 43, ¶12, 391 Wis. 2d 651, 943 N.W.2d 535.

¶29    As pertinent here, the case law on safe place claims recognizes two categories of unsafe property conditions: "structural defects" and "unsafe

---

[7] An item is considered an improvement to real property if it is a "permanent addition to or betterment of real property that enhances its capital value and that involves the expenditure of labor or money and is designed to make the property more useful or valuable[,] as distinguished from ordinary repairs."  *Kohn v. Darlington Cmty. Sch.*, 2005 WI 99, ¶17, 283 Wis. 2d 1, 698 N.W.2d 794 (citations omitted).  Larimore does not meaningfully engage with most of the different components of this definition, and instead relies exclusively on our unpublished decision in *Tauscher v. Acuity*, No. 2022AP738, unpublished slip. op. ¶¶19-20 (WI App Jan. 26, 2023).  According to Larimore, *Tauscher* stands for the proposition that an item is not an improvement if the item can be "readily altered or removed."  Larimore misreads *Tauscher*—the issue in that case was whether the absence of exterior lighting on an exterior walkway and step was part of the design of that improvement.  *Id.*, ¶¶19-23.  *Tauscher* did not purport to set up a standalone test for determining whether an item is an improvement based on the ease with which its components could be altered or removed.

conditions that are associated with the structure."[8]  *Barry*, 245 Wis. 2d 560, ¶21 & n.4.  A structural defect is "a hazardous condition inherent in the structure by reason of its design or construction."  *See Barry*, 245 Wis. 2d 560, ¶28.  In other words, "[a] distinguishing characteristic of a structural defect is that" the hazard "flows from a faulty design or from the faulty execution of a design." *Wagner v. Cincinnati Cas. Co.*, 2011 WI App 85, ¶20, 334 Wis. 2d 516, 800 N.W.2d 27.  In contrast, an unsafe condition associated with the structure is a condition that arises from "the failure to keep an originally safe structure in proper repair or properly maintained," and "may develop over time."

¶30    There are many Wisconsin cases that discuss the differences between structural defects and unsafe conditions that are associated with the structure, and the distinction between these two categories is critical in this case. The reason is because the statute of repose may bar safe place claims that are premised on structural defects, but it does not apply as a bar to safe place claims that are premised on unsafe conditions associated with a structure.  *Soletski*, 385 Wis. 2d 787, ¶13.[9]  That is because our supreme court has determined that claims premised on unsafe conditions associated with the structure are claims that fall

---

[8] There is also a third category of unsafe conditions that can give rise to liability under the safe place statute.  That category is specific to employers, who may also be liable for "unsafe conditions unassociated with structure." *Barry v. Employers. Mut. Cas. Co.*, 2001 WI 100, ¶21 n.4, 245 Wis. 2d 560, 630 N.W.2d 517 (citation omitted).  Larimore has not raised this basis for safe place liability and we do not further address it.

[9] Another distinction between structural defects and unsafe conditions associated with a structure pertains to the element of notice.  If the safe place claim is premised on an unsafe condition associated with a structure, a plaintiff must prove that the defendant "had either actual or constructive notice of the unsafe property condition." *Correa v. Woodman's Food Mkt.*, 2020 WI 43, ¶12, 391 Wis. 2d 651, 943 N.W.2d 535; *Barry*, 245 Wis. 2d 560, ¶23.  On the other hand, if the safe place claim is premised on a structural defect, then proof of notice is not required. *Id.*, ¶22.

under the previously noted maintenance exception to the statute of repose. *Mair*, 291 Wis. 2d 132, ¶¶23, 29 (citing WIS. STAT. § 893.49(4)(c)).[10]

¶31    We now consider whether Larimore's claim is premised on a structural defect such that it is barred by the statute of repose; or an unsafe condition associated with the structure such that it is excepted from the statute of repose by WIS. STAT. § 893.89(4)(c). *Barry*, 245 Wis. 2d 560, ¶¶27-28. Whether an unsafe property condition is properly categorized as a structural defect or an unsafe condition associated with the structure is highly fact dependent, but if the facts are undisputed, it can be decided as an issue of law. *See Wagner*, 334 Wis. 2d 516, ¶¶17, 38.

¶32    Here, the unsafe property condition is the accumulation of ice in the loading area. It is undisputed that the ice formed as a result of the defective design of the downspout, which discharged water from the roof directly onto the pavement. It is further undisputed that the defective design has been unchanged since its installation, and that the downspout has not fallen into disrepair. Thus, the accumulation of ice did not result from a "failure to keep an originally safe

---

[10] Specifically, our supreme court cited WIS. STAT. § 893.89(4)(c)'s exception for claims brought against "an owner or occupier of real property for damages resulting from negligence in the maintenance … of an improvement to real property," and it stated that that exception "correlates" with unsafe conditions associated with the structure:

> Under the safe place statute, a failure to "maintain" correlates to an unsafe condition associated with the structure, and thus allegations of such defects do not fall under the purview of the … statute of repose. Thus, from a plain reading of the statute, we can conclude that § 893.89 bars safe place claims resulting from injuries caused by structural defects, but not by unsafe conditions associated with the structure, [once the exposure period has passed].

*Mair v. Trollhaugen Ski Resort*, 2006 WI 61, ¶29, 291 Wis. 2d 132, 715 N.W. 2d 598.

[downspout] in proper repair or properly maintained." ***Barry***, 245 Wis. 2d 560, ¶¶27-28. Rather, the undisputed facts show that the accumulation of ice was a hazard that flowed directly from a defect in the downspout's original design. *See* ***Wagner***, 334 Wis. 2d 516, ¶20. We therefore conclude that Larimore's safe place claim is premised on a structural defect, and it falls within the purview of the statute of repose.

¶33 Larimore makes two arguments to the contrary, but neither is consistent with the safe place case law that distinguishes structural defects from unsafe conditions associated with the structure. He first points out that "the ice on which he fell is not itself a structural defect," and he argues that the ice is more rationally characterized as an unsafe condition associated with the downspout. We see the intuitive appeal of this argument. It is of course correct that the ice on which Larimore fell is not itself a structure or a structural defect, and if we were to consider Larimore's argument in a vacuum, we might be persuaded. However, the case law makes clear that, when determining the category of an unsafe property condition, the pertinent inquiry is analyzing how the dangerous property condition arose. *See, e.g.*, ***Mair***, 291 Wis. 2d 132, ¶¶22-23 (we ask whether the unsafe condition arose from the structure's original "design or construction" or from "the failure to keep an originally safe structure in proper repair or properly maintained"). Here, Larimore's own expert concluded that the unsafe condition at issue—the ice—arose from the downspout's defective design. Therefore, his claim is based on a structural defect and subject to the statute of repose.

¶34 Larimore next argues that even if the ice arose from the downspout's defective design, we can still conclude that his safe place claim is based on an "unsafe condition associated with the structure." He argues that this is so because the ice also arose, at least in part, due to Rhode Enterprises' and Midland's failure

15

to "properly maintain" the area around the downspout. Specifically, he contends that the ice accumulated because the defendants did not inspect the downspout and did not apply salt or sand around the downspout, which would have "maintain[ed] the area … free from such hazardous conditions."

¶35 We again see the intuitive appeal of Larimore's position; however, it likewise does not comport with the case law. Here, Larimore focuses on actions that the defendants could have taken, rather than on how the unsafe property condition arose. Yet, as stated, for a safe place claim to be premised on an "unsafe condition associated with a structure," the condition must arise from "the failure to keep an *originally safe structure* in proper repair or properly maintained." *Mair*, 291 Wis. 2d 132, ¶23 (emphasis added). Here, it is undisputed that the defective design of the downspout rendered it unsafe from the date of its construction. And there are no facts to suggest that the downspout itself was not maintained such that it had fallen into disrepair.

¶36 Accordingly, we conclude that the unsafe property condition that is the basis of Larimore's safe place claim arose from a structural defect. Thus, the statute of repose applies to his safe place claim. And because it is undisputed that the exposure period for the downspout had lapsed at the time of his injury, his safe place claim is barred by the statute of repose.

### B. Common Law Negligence

¶37 We now address Larimore's claims for common law negligence. As discussed, a defendant may be liable for negligence if the defendant's action or inaction breached the duty of reasonable care and caused the plaintiff's injury. And, as relevant here, an injury may have more than a single cause. *Cefalu v. Continental W. Ins. Co.*, 2005 WI App 186, ¶11, 285 Wis. 2d 766, 703 N.W.2d

743. The test for causation in Wisconsin is whether a particular factor was a "substantial factor" in producing the injury, meaning that it had "such an effect in producing the injury as to lead a reasonable person to regard it as a cause, using the word in the popular sense." *Id.* (citation omitted).

¶38 Here, Larimore's negligence claim is premised on two distinct theories of negligent causation: he asserts that his injury was caused by the negligent failure to alter the downspout so that it would not discharge water onto the pedestrian area near the loading dock, and also by the negligent failure to take actions like salting or sanding that could have remediated the ice near the downspout after it formed. For reasons we now explain, any recovery based on a negligent failure to alter the design of the downspout is barred by the statute of repose, but a claim based on the negligent failure to remediate ice is not.

### 1. Failure to Alter the Downspout

¶39 We begin with Larimore's theory regarding the failure to alter the downspout. In support of this theory, Larimore pointed to Sundby's testimony that Rhode Enterprises or Midland could have bought tubing for less than $20 and attached it to the end of the downspout, which would have extended the downspout's length and resulted in the water being "discharged to [a] grassy area adjacent to the building," away from any pedestrian areas. In other words, Larimore is arguing that Rhode Enterprises and Midland breached their duty of reasonable care by failing to reroute the downspout, and that this breach caused his injury.

¶40 A negligence claim premised on this theory of causation is barred by the unambiguous language of the statute of repose. As stated, the statute provides that "no action may be commenced … for an injury … arising out of any

deficiency or defect in the design of" an improvement to real property. Wis. Stat. § 893.89(2). And here, Larimore is alleging that his injury arose out of the defect in the design of the downspout, and more specifically, the defendants' failure to correct that defect. This is unequivocally barred by the statute of repose.

¶41 We addressed a similar theory of liability in *Cristiano*, 355 Wis. 2d 403. There, the plaintiff was injured as he rode on an elevator that did not have a safety gate, and he argued that the owner of the building was negligent for failing to modify the elevator's design by adding a gate. *Id.*, ¶¶2, 25. Like here, the negligence claim in *Cristiano* was based on a failure to modify an improvement's defective design and, for that reason, we concluded that it was barred by the statute of repose. *Id.*, ¶25.

¶42 To the extent that Larimore might argue that his negligence claim falls under the maintenance exception in Wis. Stat. § 893.89(4)(c), we disagree. For purposes of § 893.89(4)(c), our supreme court has interpreted the term "maintenance" narrowly, to mean "the work of keeping something in proper condition; upkeep." *See Hocking*, 326 Wis. 2d 155, ¶48 (citation omitted). Thus, the maintenance exception might apply if the downspout deteriorated or was otherwise not in good condition because Rhode Enterprises and Midland failed to perform routine maintenance and upkeep, but, as discussed, there are no such allegations in this case.[11]

---

[11] Larimore makes a different argument related to Wis. Stat. § 893.89(4)(c) that we briefly address. By way of background, there was an electrical heat cable running through the downspout, and Rohde Enterprises had instructed Midland to plug it in during the winter months. In his briefing, Larimore asserts that the purpose of the heat cable was to prevent ice buildup. Therefore, he asserts, the heat cable was "clearly for the purpose of keeping the roof in proper condition," which, he contends, constitutes "maintenance" within the meaning of § 893.89(4)(c).

(continued)

¶43    Accordingly, to the extent that Larimore's negligence claim is based on Rhode Enterprises' and Midland's negligent failure to reroute the downspout, it is barred by the statute of repose.

## 2.  Failure to Remediate Ice

¶44    We now turn to Larimore's second theory of negligent causation, which was that Rhode Enterprises, Midland, and Kittleson Construction breached their duty of reasonable care by failing to abate ice in pedestrian areas on the property.  Here, Larimore's focus is not on the defendants' inaction with respect to modifying the design of the downspout, but rather on the defendants' inaction with respect to addressing the slippery conditions on the pavement in the loading area.  For reasons we now explain, this theory of negligent causation is independent of any theory that is based on the failure to modify a defect with the downspout's design.  Therefore, it falls outside the statute of repose.

¶45    It is undisputed that the design of the downspout was one cause of Larimore's injury, but, as discussed, an injury may have more than a single cause.

Larimore further contends that this maintenance activity created the slippery condition in the loading area.

Without reaching the merits of Larimore's argument, we conclude that it does not have sufficient factual support to survive summary judgment.  Although Larimore makes various assertions about the function of the heat cable and its specific role in his injury, he does not point to any expert testimony that would support his claims.  *See Poston v. Burns*, 2010 WI App 73, ¶25, 325 Wis. 2d 404, 784 N.W.2d 717 ("[A] jury may not be invited, or encouraged to speculate on matters which are not of common knowledge, and to which there is not a scintilla of competent evidence in the record.").  At most, he points to Midland's answers to interrogatories; however, this helps him little.  Midland appeared to rely on Rhode Enterprises' interrogatory response in its own interrogatory answer, and Rhode Enterprises admitted that his answers were based on a "general understanding" of heat cables and that Rhode Enterprises was "unaware of the specifics of the heat cable set up."  There is no evidence that the heat cable was not part of the original design of the downspout, nor is there any competent evidence that the heat cable made an otherwise safe structure unsafe.

And here, based on the summary judgment materials, a jury could reasonably determine that some or all of the defendants breached their duty of reasonable care by failing to inspect for and remediate ice on the property, and that their negligence was a "substantial factor" in producing Larimore's injury. *See Cefalu*, 285 Wis. 2d 766, ¶11. For instance, there is evidence that David Rohde "retained control of the snow plowing and removal of ice," but did not monitor the conditions of the building in the winter. There is evidence that Rohde knew that the icy buildups were common in the loading area, but that he instructed Kittleson to stop salting the parking areas, alley, and loading area where Larimore fell. And there is evidence that Midland directed customers to use the loading area to pick up purchased material and was aware that ice accumulated in that area, but Midland did not have any policies or procedures for checking on the conditions of ice and snow. Because a theory of negligent causation based on these and related failures is not premised on a failure to use reasonable care with regard to the construction or design of an improvement to real property, this claim is not barred by the statute of repose.

¶46    The defendants make several related arguments to the contrary, but none are persuasive. They first argue that the defective design of the downspout was the "sole cause of the ice," but that is not the pertinent question here. For purposes of an analysis of the elements of negligence, the question is not what caused the ice, but what caused the injury. As stated, a jury could reasonably find that the failure to take steps such as salting or sanding that could have remediated the ice was a cause of the fall and injury.

¶47    The defendants point out that the ice would not have existed but for the downspout's design, and if there had been no ice, Larimore would not have fallen. In essence, the argument is that the statute of repose should bar any claim

related to Larimore's injury because his fall would not have occurred *but for* the downspout's defective design, which, as noted, is a "structural defect" and subject to the statute of repose. In other words, the defendants argue that the statute of repose should shield the defendants from liability for any and all negligent acts or omissions—even those that are independent of a structural defect—if the causal chain of events can be traced in some way back to a structural defect that falls under the statute of repose.

¶48    If the defendants' argument were correct, the statute would go beyond its purpose of cutting off liability for "any deficiency or defect in the design … of, the construction of, or the furnishing of materials for" an improvement to real property. *See* WIS. STAT. § 893.89. It would instead broadly immunize all sorts of negligent conduct beyond the scope of the legal protections set forth in the statute of repose. The defendants do not cite any legal authority that supports that premise, and their argument is at odds with our supreme court's language in *Mair*. There, the court explained that applying the statute of repose to claims based on structural defects "will terminate liability for these defects without affecting an owner's duty to repair and maintain a structure in a condition as safe as reasonably possible given any inherent defects in its structure." *Mair*, 291 Wis. 2d 132, ¶35.

¶49    As part of this argument, the defendants cite *Heintz v. Hanson*, No. 2015AP1790, unpublished slip op. (WI App June 14, 2016). According to the defendants, *Heintz* stands for the proposition that the defendants had "no duty" to take steps that would ameliorate any slippery conditions that could be traced back to the downspout. We are not bound by our unpublished decision in *Heintz*, but in any event, the *Heintz* decision does not stand for that proposition. As we now explain, *Heintz* stands for the now-familiar proposition from *Hocking* and

21

*Cristiano* that, "where an improvement to real property is defective from the time of construction, an owner's subsequent failure *to discover and correct the defect* does not constitute a negligent failure to inspect and maintain under [WIS. STAT.] § 893.89(4)(c)." *Id.*, ¶13 (emphasis added). *Heintz* does not hold that the statute of repose broadly immunizes defendants for other failures in ameliorating hazards that can be traced back to a structural defect.

¶50     In *Heintz*, the plaintiff was injured when a wooden deck that was attached to his residence collapsed. *Id.*, ¶2. The experts agreed that the deck was defective from the time of its construction for several reasons, all of which caused the deck to rot and, eventually, to collapse. *Id.*, ¶¶5-7. Specifically, the deck had not been attached to the building using a "true" ledger board, and the way the ledger board was fastened on top of the siding would have allowed water to enter the area behind the ledger, causing it to rot. *Id.*, ¶¶5-6. The plaintiff's expert explained that the "effect of weather has a huge impact as things deteriorate," and opined that "as things change," an owner "has the responsibility to recognize … [and] react to those changes." *Id.* The plaintiff's expert concluded that the injury was caused both by the structural defects that were part of the original construction, and also by the defendants' failure to address the deterioration over time that had been caused by those original defects. *Id.*, ¶¶6-7. The circuit court granted summary judgment in favor of the defendants, concluding that the negligence claims were barred by the statute of repose.

¶51     On appeal, the plaintiff argued that there was a genuine dispute of material fact regarding whether the failure to address the deck's deterioration, "as opposed to the structural defects," was a cause of the collapse. *Id.*, ¶19. The plaintiff argued that the failure to correct the deterioration constituted "negligent maintenance," and that the exception to the statute of repose found in WIS. STAT.

§ 893.89(4)(c) applied. *Id.* We disagreed, explaining that the defects in construction and subsequent deterioration of the deck could not "be distinguished and analyzed separately for statute of repose purposes." *Id.*, ¶20. Under the circumstances, the deterioration of the deck was part and parcel of its original structural defects, which were precisely what caused the deck to deteriorate and eventually collapse. *Id.* Applying the holdings of *Hocking* and *Cristiano*, we reasoned that "the defendants' failure to discover and correct the structural defects in the deck does not constitute negligent maintenance, operation, or inspection under WIS. STAT. § 893.89(4)(c)." *Id.*, ¶18.

¶52 Contrary to the argument here, *Heintz* did not hold that a defendant has "no duty" to correct a hazardous condition that can be traced back to a defective structure. *Heintz* instead stands for the established proposition that, when the theory of negligent causation is that the defendant failed to discover and correct an original design defect, that theory falls squarely within the scope of the statute of repose. As we explained above, this is not the case with respect to Larimore's injury. *See supra*, ¶¶43-44. Here, the theory is that the defendants could have taken steps to ameliorate the hazard, such as salting or sanding, without correcting the design of the downspout.

¶53 Therefore, we conclude that to the extent that Larimore's theory of negligence is premised on the defendants' failure to inspect for and to remediate ice on the property, it is not barred by the statute of repose.

## CONCLUSION

¶54 For the reasons explained above, we conclude that Larimore's safe place claim is barred by the statute of repose, but that the circuit court erred in dismissing his negligence claim. Accordingly, we affirm in part and reverse in

part and remand to the circuit court for further proceedings consistent with this opinion.

*By the Court.*—Order affirmed in part, reversed in part and cause remanded for further proceedings.

Not recommended for publication in the official reports.